**BRECKENRIDGE INDEPENDENT SCHOOL DISTRICT,**
**Appellant,**

**v.**

**Janine VALDEZ, individually and as next friend of Dennise Valdez, a Minor, Appellee.**

**No. 11–05–00343–CV.**

Court of Appeals of Texas, Eastland.

Oct. 19, 2006.

---

Dennis J. Eichelbaum, Janice S. Parker, Sharon S. Gilmore, Schwartz & Eichelbaum, P.C., Frisco, for appellant.

A. Scott Campbell, Law Office of A. Scott Campbell, McKinney, for appellee.

Panel consists of: WRIGHT, C.J., and McCALL, J., and STRANGE, J.

## OPINION

TERRY McCALL, Justice.

■ Breckenridge Independent School District (BISD) appeals from the trial court's order denying its plea to the jurisdiction raising governmental immunity in a suit brought by Janine Valdez, individually and as next friend of her daughter, Dennise Valdez (Valdez).[1] The issue on appeal is whether Valdez alleged facts demonstrating a valid waiver of BISD's governmental immunity under the Texas Tort Claims Act.[2] *See* TEX. CIV. PRAC.

---

1. BISD asserted that there had been no waiver of sovereign immunity in its first amended plea to the jurisdiction. Sovereign immunity refers to the state's immunity from suit and liability. *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). It protects the state and various divisions of state government from liability. *Id.* Governmental immunity, on the other hand, protects political subdivisions of the state, including counties, cities, and school districts. *Id.*

2. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.001–.109 (Vernon 2005 & Supp.2006).

& Rem.Code Ann. § 101.021 (Vernon 2005). Because we hold that Valdez did not allege facts demonstrating a valid waiver of governmental immunity, we reverse and render judgment dismissing this cause for want of jurisdiction.

### Background Facts

Valdez brought this negligence action against BISD based on the conduct of its bus driver Joyce Campbell. Valdez alleged the following background facts in her petition:

5. On the morning [of] May 20, 2004, four year old Dennise Valdez was picked up by bus driver Joyce Campbell, to be taken to East Elementary, where she was to attend a special needs class from 9:00 a.m. to 11:00 a.m. that morning. Dennise was and is severely disabled, cannot verbally communicate, and is wheel chair bound.

6. Incredibly, the bus driver drove the bus directly to the bus barn, bypassing the school altogether, and parked the bus, leaving Dennise alone inside. She remained trapped and abandoned in the bus for approximately two hours, until the bus driver returned. Little Dennise was then driven home, and at that time, Plaintiff Janine Valdez was not told that Dennise had been left on the bus for two hours. It was not until Janine Valdez spoke to Dennise's teacher that day did she learn that Dennise had never been to school. Only after learning this did the District then acknowledge what happened. Dennise was then taken to Stephens Memorial Hospital, where she was treated for heat prostration.

Valdez alleged the following facts in support of her negligence claim against BISD: (1) that Campbell was an employee of BISD; (2) that Campbell's actions in driving the bus occurred in furtherance of her employment; (3) that Campbell's actions—

"in apparently and incredibly forgetting to take her one and only passenger to school" and, instead, "driving the bus directly to the bus barn and parking it with Dennise Valdez inside"—constituted negligence; (4) that Campbell's negligence proximately caused damages to the plaintiff; and (5) that, because Campbell's actions occurred in furtherance of her employment with BISD, the school district was vicariously liable for the plaintiff's damages. Valdez also alleged that Dennise Valdez's injuries arose from the operation or use of a motor vehicle and that, therefore, there had been a waiver of BISD's governmental immunity under the Tort Claims Act:

8. The bus driver's wrongful and negligent conduct, in driving the bus to the bus barn, and parking the same with little Dennise inside, directly and proximately caused Dennise's injuries, as described below. Dennise's injuries, therefore, clearly arose out of the operation or use of a motor vehicle, and as such, the District is subject to liability under Tex. Civ. Prac. & Rem.Code section 101.021.

BISD filed a plea to the jurisdiction asserting that Dennise Valdez's alleged injuries did not arise from the operation or use of a motor-driven vehicle as required for a waiver of governmental immunity under the Tort Claims Act. Rather, BISD argued that the alleged injuries arose from Campbell's negligent supervision in failing to unload Dennise Valdez from the bus. Therefore, BISD asserted that there had been no waiver of its governmental immunity under the Tort Claims Act.

The trial court held a hearing on BISD's plea to the jurisdiction. Later, the trial court entered an order denying the plea. As permitted by Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(8) (Vernon Supp.2006), BISD filed this interlocutory appeal from the trial court's order.

## Issues on Appeal

BISD presents three issues for review. BISD argues that the trial court erred in denying its plea to the jurisdiction for the following reasons: (1) the facts alleged by Valdez did not demonstrate that Dennise Valdez's injuries arose from the operation or use of a motor vehicle; (2) there was no clear and unambiguous waiver of its governmental immunity by the legislature; and (3) Valdez failed to exhaust administrative remedies.

## Standard of Review

Governmental immunity from suit defeats a trial court's subject matter jurisdiction. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex.2004); *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex.2003); *Ector County v. Breedlove*, 168 S.W.3d 864, 865 (Tex.App.-Eastland 2004, no pet.). Therefore, governmental immunity is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225–26; *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex.1999). Whether a court has subject matter jurisdiction is a legal question that we review de novo. *Miranda*, 133 S.W.3d at 226; *Breedlove*, 168 S.W.3d at 865.

The Tort Claims Act provides a limited waiver of sovereign or governmental immunity, allowing suits to be brought against governmental units only in certain, narrowly defined circumstances. *Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex.2001); *Breedlove*, 168 S.W.3d at 865. A plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *Whitley*, 104 S.W.3d at 542; *Miller*, 51 S.W.3d at 587. For the purposes of this appeal, BISD does not dispute the jurisdictional facts alleged by Valdez, and the parties did not offer any evidence at the hearing on BISD's plea to the jurisdiction. Therefore, we look solely to Valdez's pleadings in determining the immunity issue. *See Miranda*, 133 S.W.3d at 226–27. When a plea to the jurisdiction challenges the pleadings, we consider de novo whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* at 226. We construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *Id.*

## Governmental Immunity and the Tort Claims Act

BISD, a governmental unit, is immune from liability for Valdez's alleged injuries unless that immunity has been waived by the Tort Claims Act. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.001(3)(B), 101.025, 101.051 (Vernon 2005); *LeLeaux v. Hamshire–Fannett Ind. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992). Valdez asserts that her claims fall within the waiver of immunity provided for in Section 101.021(1) of the Tort Claims Act. Section 101.021(1) provides that a governmental unit in this state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law.

Thus, pursuant to the limited waiver of liability set forth in Section 101.021(1), a school district is not liable for injuries proximately caused by a negligent employee, unless the injury "arises from

the operation or use of a motor-driven vehicle." Because the legislature failed to define the terms "operation" and "use," the terms are construed according to their ordinary meanings. *Mount Pleasant Ind. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex.1989). "Operation" means "a doing or performing of a practical work," and "use" means "to put or bring into action or service; to apply for or apply to a given purpose." *Whitley,* 104 S.W.3d at 542; *LeLeaux,* 835 S.W.2d at 51. The "arises from" language in Section 101.021(A)(1) requires a nexus between the injury and the operation or use of the motor vehicle. *LeLeaux,* 835 S.W.2d at 51. This nexus requires more than mere involvement of the vehicle. *Whitley,* 104 S.W.3d at 543. Rather, the operation or use of the vehicle or equipment must have actually caused the injury. *Id.* The operation or use of a vehicle does not cause an injury if it does no more than furnish the condition that makes the injury possible. *Id.*

In *LeLeaux,* Monica LeLeaux and other school band members traveled to a marching contest in school buses. After marching in the contest, Monica returned to a parked and empty school bus. The rear emergency door of the bus was open. When Monica attempted to enter the emergency door by jumping through it, she hit her head on the door frame and injured herself. *LeLeaux,* 835 S.W.2d at 50–51. The supreme court held that Monica's injuries did not arise from the operation or use of the bus:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not "doing or performing a practical work"; it was not being "put or [brought] into action or service"; it was not being "employ[ed] or appl[ied] to a given purpose." The bus was nothing

more than the place where Monica happened to injure herself.

*Id.* at 51. In *LeLeaux,* Monica contended that the school district had been negligent in the operation and use of its school buses because of the school district's "practice of regularly loading and unloading the band students and their instruments through the emergency rear doors of school buses." *Id.* at 52. The supreme court agreed with Monica's contention that "[t]here is no sound reason why the acts of loading and unloading students on and off school buses should not be considered a part of the transportation process." *Id.* However, the court held that "the manner in which school district employees loaded and unloaded students had nothing to do with Monica's injury." *Id.*

■ To establish a school district's waiver of immunity from suit, a plaintiff need only *allege* that a motor vehicle was operated or used and that there was a nexus between the injury and the operation or use of the motor vehicle by a government employee. *Austin Ind. Sch. Dist. v. Gutierrez,* 54 S.W.3d 860, 863 (Tex. App.-Austin 2001, pet. denied) (emphasis in original). In this case, Valdez alleged (1) that Campbell's actions of driving the bus to the bus barn, parking it, and leaving Dennise Valdez inside the bus constituted a negligent operation or use of the school bus and (2) that there was a nexus between Dennise Valdez's alleged injuries and Campbell's negligent operation or use of the school bus because leaving Dennise Valdez inside the school bus caused her injuries. Therefore, Valdez argues that her allegations demonstrate a valid waiver of BISD's governmental immunity. Based on Valdez's allegations, BISD asserts that Dennise Valdez's injuries did not arise from the operation or use of the bus but, instead, arose from Campbell's negligent supervision in failing to unload Dennise

Valdez from the bus. Therefore, BISD argues that Valdez's allegations did not demonstrate a waiver of its governmental immunity.

Texas courts have addressed the "operation" or "use" of a motor vehicle requirement in numerous cases involving school buses. In addressing the issue, the courts have considered whether the school district employee's acts involved an actual operation or use of a school bus or whether the acts involved the supervision or control of children. *See Elgin Ind. Sch. Dist. v. R.N.*, 191 S.W.3d 263, 271–72 (Tex.App.-Austin 2006, no pet.); *Montoya v. Houston Ind. Sch. Dist.*, 177 S.W.3d 332, 336–38 (Tex.App.-Houston [1st Dist.] 2005, no pet.); *Gutierrez*, 54 S.W.3d at 863–64; *Goston v. Hutchison*, 853 S.W.2d 729, 732–34 (Tex.App.-Houston [1st Dist.] 1993, no writ); *Estate of Garza v. McAllen Ind. Sch. Dist.*, 613 S.W.2d 526, 527–28 (Tex. Civ.App.-Beaumont 1981, writ ref'd n.r.e.). When a plaintiff's injuries arise from an employee's "affirmative action" actually using or operating the bus, the school district's immunity has been waived. *R.N.*, 191 S.W.3d at 272; *Gutierrez*, 54 S.W.3d at 866–67. However, when the injuries arise from an employee's acts or omissions involving only supervision or control of children, immunity has not been waived even if the acts took place on or near the bus. *Montoya*, 177 S.W.3d at 337–38; *Goston*, 853 S.W.2d at 733–34; *Estate of Garza*, 613 S.W.2d at 528.

The courts have explained the "affirmative action" requirement for a waiver of immunity. *See R.N.*, 191 S.W.3d at 269–72. In *Gutierrez*, a school bus driver taking children home from school discharged an eight-year-old student across the street from her home. The driver honked the horn to let the student know that it was safe to cross the street. *Gutierrez*, 54 S.W.3d at 861. However, when the stu-

dent attempted to cross the street, she was struck and killed by a passing car. The Austin court held that the bus driver's "affirmative action of honking the horn," which may have contributed to the accident, constituted an "operation" or "use" of the vehicle. *Id.* at 866–67.

In *Hitchcock v. Garvin*, 738 S.W.2d 34, 36 (Tex.App.-Dallas 1987, no writ), a bus driver allegedly failed to turn on his flashing lights prior to unloading a student from the bus. Immediately after getting off of the bus, the student attempted to cross the street and was struck by a car. The Dallas court held that a bus driver's failure to activate his flashers or warning signals when students are exiting the bus constitutes an "act or omission arising from the operation or use of a motor-driven vehicle" under the Tort Claims Act. *Hitchcock*, 738 S.W.2d at 37.

The bus driver's honking of the horn in *Gutierrez* was comparable to the bus driver's failure to activate the flashing lights in *Hitchcock*. In *R.N.*, the Austin court explained *Gutierrez* and *Hitchcock* as follows:

> In both cases, because the bus was present at the time of the accident and because the bus driver engaged in some action involving the bus itself that contributed to the accident, the courts found that there was "use" of a motor-driven vehicle.

*R.N.*, 191 S.W.3d at 270.

In *Dallas Area Rapid Transit v. Willis*, 163 S.W.3d 814 (Tex.App.-Dallas 2005, pet. denied), a city bus passenger fell when she attempted to exit the bus. She asserted that the city bus driver had been negligent in stopping the bus in a manner leaving a "long step" to the curb. *Willis*, 163 S.W.3d at 817. The Dallas court explained that the use or operation of a motor vehicle includes the act of stopping the vehicle. The court held that the bus driver's "affir-

mative action of parking the bus in a way that may have contributed to the [passenger's] accident" constituted the required "operation" or "use" of a motor vehicle under the Tort Claims Act. *Id.*

On the other hand, when the school district employee's acts or omissions relate to the direction, control, and supervision of students, there is no waiver of immunity. In *Goston,* a school bus driver allowed two students to exit the bus at a non-designated stop at their request. *Goston,* 853 S.W.2d at 731. The students got into a vehicle being driven by a friend and were involved in a collision. One of the students was killed, and the other student was seriously injured. *Id.* The Houston First court concluded that leaving a student at the wrong bus stop was a failure to properly supervise the student, not a negligent use or misuse of equipment on the school bus. Therefore, the court held that immunity barred the plaintiffs' claims. *Id.* at 734.

In *Montoya,* an eight-year-old student received injuries when he fell from the emergency exit of a moving school bus. *Montoya,* 177 S.W.3d at 334. Before the accident, the student had a history of aggressive behavior on the school bus including getting out of his seat, running around on the bus, and attempting to get out of the bus through the emergency exit. The school district equipped the student's seat with a child-proof harness to restrain him. On the day of the accident, the student got out of his harness, opened the emergency exit, and fell from the bus. *Id.* at 334–35. The student's parents made three specific "operation" or "use" allegations against the school district: (1) that the bus driver had been negligent in failing to timely stop the bus before the student opened the emergency door and fell from the bus; (2) that the bus driver had been negligent in failing to maintain a reasonable lookout

while driving the bus; and (3) that the bus driver had been negligent in failing to properly use the child-proof harness to restrain the student. *Id.* at 336–37.

In analyzing the allegations in *Montoya,* the court stated that "it is generally true that a driver's negligent failure to timely stop a vehicle ... would relate to the operation of that vehicle." *Id.* at 337. However, the court concluded that the failure to stop allegations related to "the bus driver's failure to stop the bus to prevent [the student] from opening the rear door and falling out of the bus." The court explained that these allegations "actually relate[d] to the bus driver's duty to supervise and respond to [t]he student's behavior on the bus, not the driver's operation or use of the bus itself." *Id.* Similarly, the *Montoya* court concluded that the allegation of failing to maintain a reasonable lookout also related to the supervision of the students and did not constitute an actual operation or use of the bus. *Id.* Finally, the court concluded that the allegation of failing to properly use the child-proof harness did not relate to an operation or use of the bus. *Id.* at 337–38. Therefore, the court held that the school district's immunity had not been waived. *Id.* at 339.

*Whitley* involved a municipal bus. In *Whitley,* two bus passengers, Harold Whitley and Mary Burkley, got into an altercation. The bus driver stopped the bus and told Whitley to exit. The bus driver also told Whitley that he would come back for him in a few minutes. Burkley exited the bus about two blocks later, recruited her son and his friends to join her against Whitley, and then went back to the place where the bus driver had left Whitley. The group then beat Whitley severely. *Whitley,* 104 S.W.3d at 541–42. Whitley argued that his injuries arose from the use of the bus because the bus driver wrong-

fully ejected him from the bus in a dangerous area, allowed the other passenger to exit the bus, and failed to return to pick him up. *Id.* at 542. The supreme court held that Whitley's injuries did not arise from a use of the bus but, rather, "arose from the bus driver's failure to supervise the public, which is insufficient to waive immunity under the Tort Claims Act." *Id.* at 542–43.

In *Ransom v. Center for Health Care Servs.*, 2 S.W.3d 643 (Tex.App.-San Antonio 1999, pet. denied), a county agreed to provide transportation to Ransom who was mentally retarded. The driver of a county vehicle dropped Ransom off across the street from his home instead of at his home. When Ransom attempted to cross the street, he was hit by a vehicle being driven by an intoxicated driver. *Id.* at 644. The San Antonio court followed the rationale in *Goston* and concluded that leaving Ransom across the street from his home was supervisory in nature, as opposed to an operation or use of the vehicle. Therefore, the court held that immunity barred Ransom's suit. *Id.* at 645.

*R.N.* involved facts similar to the facts in this case. In *R.N.*, a school bus driver, accompanied by a bus monitor, picked up five-year-old R.N. to take her to her pre-kindergarten class. After arriving at the school, the bus driver and bus monitor got off of the bus, but they left R.N. on the bus instead of making sure that she was off of the bus. R.N. had fallen asleep during the trip to school, and she was unaware that the bus had arrived at the school. When R.N. woke up, she tried to get out of the bus but was locked inside of the bus where she remained from late-morning until mid-afternoon. In *R.N.*, the plaintiff asserted a negligence action against the school district based on the actions of the bus driver and the bus monitor. The plaintiff alleged that the bus driver and bus monitor "failed and refused to look in their bus to assure that [R.N.] was off the bus and in school," that the bus driver and bus monitor locked R.N. inside the bus from late-morning until mid-afternoon, and that R.N. received injuries resulting from being locked inside the bus. *R.N.*, 191 S.W.3d at 265–66.

In *R.N.*, the plaintiff argued that R.N.'s injuries arose from the "operation" or "use" of the bus. The Austin court described the plaintiff's argument as follows:

(1) transporting R.N. and other students constitutes use or operation of the bus; (2) stopping and unloading the bus is part of this transportation process; and (3) because R.N. was never unloaded at school, the "use" or "operation" of the bus to transport her never ceased that day; therefore (4) R.N.'s injuries arose from such use or operation.

*R.N.*, 191 S.W.3d at 268.

Valdez makes a similar argument in this case. She asserts that "operation" or "use" of a bus includes matters of transportation and that Dennise Valdez's injuries arose from the bus driver's "operation" or "use" of the bus in driving her to the bus barn and leaving her on the bus.

In *R.N.*, the court discerned the following principles from a thorough and well-reasoned analysis of relevant case law. First, for immunity to be waived under Section 101.021, "a plaintiff['s] injuries must actually have been *caused by* the use or operation of a motor vehicle." *Id.* at 271. Second, "injuries arising from supervision of bus passengers do not arise from the operation or use of a vehicle." *Id.* at 272. Third, "a bus driver's decisions and actions regarding whether and when passengers disembark the bus, and their safety in doing so, are considered supervisory in nature." *Id.* Fourth, "[o]nly where the injuries arise from some 'affirmative ac-

tion' actually using or operating the bus is immunity waived." *Id.*

The *R.N.* court then applied the principles to the plaintiff's allegations. The court first addressed the plaintiff's allegation that the bus driver and the bus monitor failed or refused "to look in their bus to assure that [R.N.] was off the bus and in school." *Id.* The plaintiff argued that this allegation constituted "an aspect of the use of the bus to transport R.N. to school." *Id.* However, the court explained that the failure to unload R.N. from the bus involved a failure to supervise her. Therefore, the court concluded that the allegations referred "only to injuries arising from a failure to supervise, not from a use or operation of the bus itself." *Id.* Because the injuries were attributable to the school district's negligent supervision, the allegations did not establish a waiver of immunity under Section 101.121. *Id.*

Next, the *R.N.* court addressed the plaintiff's allegation that the bus driver and the bus monitor locked the bus door. Broadly construing the plaintiff's pleadings, the court determined that the plaintiff sufficiently alleged that R.N. was injured by a negligent locking of the bus door. The court explained that the locking of the door was akin to the honking of the horn in *Gutierrez.* Therefore, the court held that the affirmative action of locking the door constituted a use of the bus. Because the plaintiff alleged injuries arising from the use of a bus, the court held that the plaintiff alleged a valid waiver of immunity. *Id.*

In this case, Valdez argues that Campbell's actions in driving the bus to the bus barn and parking it there with Dennise Valdez inside the bus constituted an "operation" or "use" of the bus and had nothing to do with supervision of a child. Campbell drove the bus to the bus barn because she forgot that Dennise Valdez was on the

bus. Forgetting that Dennise Valdez was on the bus and failing to unload her from the bus involved the failure to supervise Dennise Valdez. *See R.N.,* 191 S.W.3d at 272. Similar to *LeLeaux,* Dennise Valdez's injuries had nothing to do with "the manner in which school district employees loaded and unloaded students." *LeLeaux,* 835 S.W.2d at 52. Rather, Dennise Valdez was injured because Campbell forgot to unload her from the bus. As such, her injuries arose from a failure of supervision, not from a use or operation of the bus itself. Because Dennise Valdez's injuries are attributable to BISD's negligent supervision, as opposed to an "operation" or "use" of the school bus, Valdez's allegations do not demonstrate a valid waiver of governmental immunity.

Valdez did not allege an "affirmative action" on the part of Campbell constituting a use of the bus, such as the locking of the door in *R.N.* or the honking of the horn in *Gutierrez.* In the absence of such an allegation, Valdez's allegations are indistinguishable "from those stating merely injuries caused by negligent supervision." *See R.N.,* 191 S.W.3d at 272. Dennise Valdez's physical condition and being confined in a wheelchair would have prevented her from exiting the bus, whether or not Campbell locked the door. However, Dennise Valdez's inability to exit a bus cannot satisfy the requirement of an "affirmative action" on the part of BISD for a waiver of immunity under the Tort Claims Act.

Valdez did not allege facts demonstrating a valid waiver of BISD's governmental immunity. The trial court erred in denying BISD's plea to the jurisdiction. Therefore, we sustain BISD's first issue. Because we have sustained BISD's first issue, we need not address BISD's second and third issues. Tex.R.App. P. 47.1.

*This Court's Ruling*

We reverse the trial court's order denying BISD's plea to the jurisdiction and render judgment dismissing this cause with prejudice.