2012 COA 185

**Michael YOUNG, as father and next friend to D.B., a minor child; and Amy Larson, as mother and next friend to D.L., a minor child, Plaintiffs–Appellees,**

v.

**JEFFERSON COUNTY SHERIFF; and Deputy Sheriff, John E. Hodges, Defendants–Appellants.**

No. 11CA2193.

Colorado Court of Appeals, Div. IV.

Oct. 25, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

Bachus & Schanker, L.L.C., Maaren L. Johnson, Denver, Colorado, for Plaintiffs–Appellees.

Ellen G. Wakeman, County Attorney, Writer Mott, Assistant County Attorney, Golden, Colorado, for Defendants–Appellants.

Opinion by Judge LICHTENSTEIN.

¶ 1 Defendants, the Jefferson County Sheriff (Sheriff) and Deputy Sheriff, John E. Hodges, appeal the district court's order denying their partial motion to dismiss the complaint filed by plaintiffs, Michael Young (as father and next friend to D.B.) and Amy Larson (as mother and next friend to D.L.), on governmental immunity grounds. We affirm.

## I. Factual and Procedural Background

¶ 2 Plaintiffs brought this action to recover damages for injuries suffered by D.B. and D.L. (the juveniles) in an automobile accident while they were handcuffed passengers in a sheriff transport van. Hodges was driving the van, and plaintiffs alleged, among other things, that he negligently operated the van by failing to secure the handcuffed juveniles with seatbelts. Plaintiffs also sought damages from the Sheriff under the doctrine of respondeat superior.

¶ 3 Defendants moved for partial dismissal of the complaint under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, asserting immunity under the Colorado Governmental Immunity Act (CGIA). §§ 24–10–101 to –120, C.R.S.2012. Defendants argued that securing passengers in the van was not an activity that fell within the CGIA's waiver of immunity for the "operation of a motor vehicle." See § 24–10–106(1)(a), C.R.S.2012.

¶ 4 Plaintiffs responded that the proper boarding and loading of the van, including the securing of passengers, fell within the operation of a motor vehicle for purposes of the CGIA waiver. They noted that the juveniles were in the Sheriff's custody when they were being transported in the van; they were in handcuffs but not secured by seatbelts; because of the handcuffs, they did not have reasonable access to seatbelts; and they were thrown about the van in the accident.

¶ 5 In ruling on defendants' motion, the district court found that the juveniles were unable to secure themselves in the van, and, therefore, physically securing them was a function controlled by the driver, Hodges. Citing *Harris v. Regional Transportation District*, 15 P.3d 782 (Colo.App.2000), the court found that the activity of securing the juveniles with seatbelts is similar to that of a bus driver ensuring that passengers safely board and disembark from a bus, and consequently, as in *Harris*, the activity was "necessary for the vehicle's 'operation.'" The court also noted that section 42–4–236(2)(c), C.R.S.2012, requires the driver of a vehicle to· ensure that every child is properly restrained in a safety belt or child restraint system. Therefore, the court concluded that the alleged failure to secure the juveniles fell within the waiver of immunity under section 24–10–106(1)(a) and denied defendants' motion to dismiss.

¶ 6 Defendants then brought this interlocutory appeal pursuant to section 24–10–108, C.R.S.2012.

## II. Standard of Review

¶ 7 Governmental immunity is an issue of subject matter jurisdiction to be determined by the district court in accordance with C.R.C.P. 12(b)(1). *Swieckowski v. City of Fort Collins*, 934 P.2d 1380, 1383–84 (Colo. 1997). If, as here, the underlying facts are undisputed, the issue is one of law and an appellate court is not bound by the district court's determination. *Id.* at 1384.

¶ 8 Because the CGIA is in derogation of Colorado's common law, the grant of immunity is to be strictly construed against the public entity, and the waiver provisions are to be deferentially construed in favor of victims. *Harris*, 15 P.3d at 784; *see Herrera v. City & County of Denver*, 221 P.3d 423, 425–26 (Colo.App.2009) (the General Assembly's intent in enacting immunity waiver provisions was to provide for compensation to persons injured by the negligent conduct of government employees).

## III. Operation of a Motor Vehicle

¶ 9 As pertinent here, section 24–10–106(1)(a) provides that immunity is waived by a public entity in an action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment."

¶ 10 Although the statute does not define the term "operation" as used in this section, several cases have construed the term. Before 1998, these cases applied a strict construction. *See Stockwell v. Reg'l Transp. Dist.*, 946 P.2d 542, 543 (Colo.App.1997) (citing *City & County of Denver v. Gallegos*, 916 P.2d 509, 511 (Colo.1996)) ("the CGIA requires that exceptions to governmental immunity be interpreted narrowly in order to avoid imposing liability not specifically provided for in the statute") *disapproved of in part by Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo.2000).

¶ 11 For example, in *Stockwell* a division of this court defined "operation" to include any act or omission of the public employee in "driving a motor vehicle." 946 P.2d at 543–44. The division acknowledged that the term "operation" could include stopping the vehicle to allow passengers to board or disembark. *Id.* (citing *Johnson v. Reg'l Transp. Dist.*, 916 P.2d 619, 622 (Colo.App.1995)). However, the division concluded that "operation" does not include actions of the public employee that are not "essential" or "necessary" to the actions or omissions in driving the vehicle. *Id.* at 544. The supreme court has since expressly disapproved of *Gallegos*'s strict construction of the CGIA's immunity provisions, which was applied in *Stockwell*, and has instead instructed courts to broadly construe them. *Corsentino*, 4 P.3d at 1086; *see also State v. Nieto*, 993 P.2d 493, 506 (Colo.2000) (CGIA waiver provisions are entitled to deferential construction in favor of victims); *Walton v. State*, 968 P.2d 636, 643 (Colo.1998) (same).

¶ 12 Consistent with these decisions, a division of this court more recently concluded that "operation" is a "broad term which includes both the physical defects of a motor vehicle and its movement, as well as other actions fairly incidental to those defects or movements." *See Harris*, 15 P.3d at 784. The division added that "'operation' neces-

sarily refers to actions of the operator related to physical control of the functions of the motor vehicle." *Id.*

 ¶ 13 In this appeal, defendants contend that the district court erroneously expanded the *Harris* division's definition of "operation" to encompass the van driver's alleged failure to secure the juveniles with seatbelts. In particular, defendants contend that the *Harris* division's expansion of the definition applied only to an operator's functions relating to the maintenance of a motor vehicle. We do not read *Harris* so narrowly, and therefore reject their contention.

¶ 14 In *Harris,* a bus passenger was injured when she slipped and fell on ice, snow, and slush that had accumulated on the interior steps of the bus. 15 P.3d at 783. Construing the term "operation" to include actions of the operator related to physical control of the functions of the motor vehicle, the *Harris* division concluded that movement of passengers into and out of the bus was a function controlled by the bus driver. *Id.* at 784. It held, therefore, that the alleged negligent failure of a bus driver to ensure that passengers board and disembark safely is included in the waiver of immunity under section 24–10–106(1)(a). *Id.*

¶ 15 The division in *Harris* only addressed the issue of maintenance because the defendant in that case argued that even if control of the boarding and disembarking of passengers falls within the definition of "operation," the injury there was triggered only for a lack of maintenance of the bus. *Id.* Accordingly, the defendant asserted there was no waiver of immunity because section 24–10–106(1)(a) did not expressly include the word "maintenance." *Id.* The division rejected this argument, again applying a broad construction of the term. *Id.* at 784–85.

¶ 16 Thus, as stated in *Harris,* the term "operation" encompasses the act of ensuring that passengers board and disembark safely, because the movement of passengers into and out of the bus is a function controlled by the bus driver. *Id.* Applying this construction, we must determine whether the act of securing the juveniles with seatbelts was likewise a function controlled by the driver of the transport van.

¶ 17 Here, the juveniles alleged that they were dependent on the van driver to secure them because they were handcuffed, which deprived them of access to the seatbelts, a point defendants do not dispute. Under these circumstances, we agree with the district court that securing the handcuffed juveniles with seatbelts was a function controlled by the van driver. In construing the term "operation," we discern no meaningful difference between the van driver's function to secure the handcuffed juveniles with seatbelts to ensure that they were safely loaded into the van and a bus driver's function to ensure that passengers safely board and disembark from a bus. We therefore agree with the district court's determination that the alleged failure to secure the juveniles fell within the waiver of immunity in section 24–10–106(1)(a).

¶ 18 We are not persuaded otherwise by defendants' argument that this case is more akin to *Stockwell,* in which another division of this court held that the CGIA's immunity waiver did not apply to the provision of adequate security measures for passengers. In *Stockwell,* the plaintiff suffered injuries when he was attacked and beaten by other passengers while riding a bus. 946 P.2d at 543. The plaintiff alleged that the public transportation district had a duty to provide for his safety and negligently breached that duty by failing to provide adequate security measures. *Id.* A division of this court determined that although providing adequate security may be essential to attract and retain passengers, it was not necessary to the bus driver's actions or omissions in driving the vehicle, and therefore did not fall within the CGIA's immunity waiver. *Id.* at 544. Similarly, defendants here contend that because the van driver's alleged failure to secure the handcuffed juveniles was wholly unrelated, and not necessary, to the driving of the van, such activity likewise did not fall within the CGIA's waiver of immunity. We conclude that *Stockwell* is distinguishable for three reasons.

¶ 19 First, in *Stockwell,* the division applied a strict construction of the term "operation," which has since been disapproved by

our supreme court. *See Corsentino,* 4 P.3d at 1086; *Nieto,* 993 P.2d at 506; *Walton,* 968 P.2d at 643.

¶ 20 Second, the provision of adequate security measures in *Stockwell* was not a function of the bus driver, but rather of a third party—the public transportation district. In contrast here, as the district court found, the securing of the handcuffed juveniles was a function of the van driver, because the juveniles had no ability to secure the seatbelts themselves.

¶ 21 Third, in *Stockwell,* the passenger's injuries allegedly arose as a result of an assault that coincidentally occurred in the bus. But here, the juveniles' injuries allegedly arose as a result of the van driver's conduct within his control, that is, failing to ensure that his passengers were safely loaded into the van. *See Harris,* 15 P.3d at 784.

¶ 22 Accordingly, under the circumstances here, we conclude that the district court properly determined that defendants' immunity was waived under section 24–10–106(1)(a).

¶ 23 The order is affirmed.

Judge WEBB and Judge CARPARELLI concur.