2014 COA 45

**Christie ROBINSON, individually and as parent and next friend of C.R., a minor child, Plaintiff–Appellee and Cross–Appellant,**

**v.**

**IGNACIO SCHOOL DISTRICT, 11JT, Defendant–Appellant and Cross–Appellee.**

**Court of Appeals No. 13CA1090**

Colorado Court of Appeals, Div. I.

Announced April 10, 2014

tion of the court's judgment that denied its motion to dismiss. Robinson cross-appeals the portion of the judgment that dismissed her individual claim for lack of notice pursuant to the CGIA. We reverse that part of the court's judgment denying the district's immunity under the CGIA, and therefore, do not address the portion of its judgment denying Robinson's individual claim.

## I.  Background

¶ 2 The Ignacio School District transports students of all ages, from elementary to high school, on the same bus. Because of prior bullying by older students, the district implemented a seating assignment directive that required younger students to sit at the front of the bus and the older ones at the back of the bus.

¶ 3 However, in February 2011, two older students, including the bus driver's son, left their assigned seats in the back of the bus and moved towards the front near C.R., Robinson's seven-year-old son. When the bus driver saw her son and his friend move towards the front, she braked and ordered her son to sit down. However, they disobeyed her and sat by C.R. They then grabbed his neck and began to jerk his head back and forth, causing a severe cervical strain and a concussion.

Phillip W. Snyder, P.C., Phillip W. Snyder, Durango, Colorado, for Plaintiff–Appellee and Cross–Appellant

Semple, Farrington & Everall, P.C., M. Brent Case, Mary B. Gray, Denver, Colorado, for Defendant–Appellant and Cross–Appellee

Opinion by JUDGE TAUBMAN

¶ 1 Plaintiff, Christie Robinson, individually and as parent and next of friend of her son, C.R., sued defendant, Ignacio School District, 11JT, for injuries C.R. sustained on a school bus. The district moved to dismiss the case for lack of subject-matter jurisdiction under the Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, C.R.S.2013. The court partially denied the motion. Thus, the district appeals the por-

¶ 4 As a result, Robinson, individually and as parent and next friend of her son, filed suit against the district for negligence and as respondeat superior for the bus driver's alleged wanton and willful conduct in failing to control the students. In response, the district moved to dismiss Robinson's complaint for lack of subject-matter jurisdiction.

¶ 5 The trial court partially granted the district's motion. It dismissed Robinson's individual claim and respondeat superior claim for the bus driver's alleged willful and wanton negligence. However, it allowed Robinson's negligence claim to stand because the court found that the district had waived its immunity under the CGIA since Robinson's injuries resulted from the operation of a motor vehicle by a public employee under section 24–10–106(1), C.R.S.2013.

¶ 6 The district filed this interlocutory appeal pursuant to section 24–10–108, C.R.S. 2013.

## II.   Waiver of Sovereign Immunity

¶ 7 The district contends that the trial court erred in applying the "operation of a motor vehicle" waiver of government immunity to a claim for injuries resulting from a school bus driver's alleged failure to supervise students on a school bus. It asserts that negligent supervision does not implicate operation of a motor vehicle. We agree.

### A.   Standard of Review

¶ 8 We review questions of statutory interpretation de novo. *Specialty Rests. Corp. v. Nelson,* 231 P.3d 393, 397 (Colo.2010). When reviewing issues of statutory construction, we must ascertain and effectuate the General Assembly's intent. *Id.* To discern legislative intent, we first examine the plain language of the statute, giving words and phrases effect according to their plain and ordinary meanings. *People v. Hopkins,* 2013 COA 74, ¶¶ 10–11, 328 P.3d 253. " 'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' " *Curtis v. Hyland Hills Park & Recreation Dist.,* 179 P.3d 81, 83 (Colo. App.2007) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). "If ... the relevant statutory language is unambiguous, we apply it as written, without resorting to other methods of ascertaining legislative intent." *Fleury v. IntraWest Winter Park Operations Corp.,* 2014 COA 13, ¶ 35, 328 P.3d 253. In construing a statute's ordinary meaning, we read the "statutory scheme" as a whole "to give 'consistent, harmonious, and sensible effect to all parts of the statute.' " *Id.* (quoting *Jefferson Cnty. Bd. of Equalization v. Gerganoff,* 241 P.3d 932, 935 (Colo.2010)).

### B.   Analysis

¶ 9 The CGIA protects public entities from liability in all "claims for injury which lie in tort or could lie in tort." § 24–10–106(1); *see Foster v. Bd. of Governors of the Colo. State Univ. Sys.,* 2014 COA 18, ¶ 11, —— P.3d ——. However, public entities waive their sovereign immunity under certain exceptions. § 24–10–106(1); *see also Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000).

¶ 10 Whether a public entity waives immunity under the CGIA is an issue of subject-matter jurisdiction that a trial court must resolve in accordance with C.R.C.P. 12(b)(1). *See Young v. Jefferson Cnty. Sheriff,* 2012 COA 185, ¶ 7, 292 P.3d 1189; *Curtis,* 179 P.3d at 83. Under C.R.C.P. 12(b)(1), the plaintiff has the burden of proving jurisdiction and demonstrating that governmental immunity has been waived. *Curtis,* 179 P.3d at 83. "Because the CGIA is in derogation of Colorado's common law, the grant of immunity is to be strictly construed against the public entity, and the waiver provisions are to be deferentially construed in favor of victims." *Young,* ¶ 8.

¶ 11 As pertinent here, a public entity waives its sovereign immunity in an action for injuries resulting from "[t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment ...." § 24–10–106(1)(a).

¶ 12 The school district argues that this waiver provision requires a physical manifestation of operation of a motor vehicle. Robinson disagrees. We agree with the school district.

¶ 13 While the statute does not define the term "operation," the supreme court has instructed courts to broadly interpret waiver provisions. *See Corsentino,* 4 P.3d at 1086 (courts should broadly interpret immunity waivers to favor victims); *see also State v. Nieto,* 993 P.2d 493, 506 (Colo.2000) (same); *Walton v. State,* 968 P.2d 636, 643 (Colo.1998) (same); *Young,* ¶ 12 (recognizing *Corsentino* requires courts to broadly interpret CGIA provisions that waive immunity). Thus, consistent with these decisions, recent appellate cases have broadly construed the term "operation." *Young,* ¶ 12.

¶ 14 Specifically, divisions of this court have defined "operation" as "actions of the operator related to [the] physical control of

the functions of the motor vehicle." *Harris v. Reg'l Transp. Dist.*, 15 P.3d 782, 784 (Colo. App.2000) (citing *Stockwell v. Reg'l Transp. Dist.*, 946 P.2d 542, 544 (Colo.App.1997)); *Young*, ¶ 12. For example, in *Harris*, 15 P.3d at 785, a division of this court relied on *Stockwell*, 946 P.2d at 544, to conclude that a bus driver's responsibility to physically remove dangers so that passengers could safely board and disembark a bus implicates the "operation of a motor vehicle." *See Stockwell*, 946 P.2d at 544 (defining "operation" as stopping a vehicle to allow passengers to board or disembark a bus); *see also Harris*, 15 P.3d at 784 (relying on *Stockwell* ).

¶ 15 Despite *Harris'* reliance on *Stockwell*, the parties in this case dispute the relevance of *Stockwell*. Robinson contends that because the supreme court in *Corsentino* abrogated *Stockwell's* strict construction of governmental immunity waiver provisions, its definition of operation of a motor vehicle is no longer correct. We disagree.

¶ 16 A closer reading of *Corsentino* reveals that the supreme court disapproved of *Stockwell's* strict interpretation of waiver provisions, but did not overrule its definition of operation of a motor vehicle. *See Young*, ¶ 19. Therefore, we conclude that the *Stockwell* division's interpretation of the term "operation of a motor vehicle" is still applicable. *See Harris*, 15 P.3d at 783 (relying on *Stockwell's* definition of operation of a motor vehicle while broadly construing the term "operation").

¶ 17 *Stockwell* is particularly relevant because its facts are similar to those in this case. As pertinent here, the plaintiff filed a suit against the Regional Transportation District (RTD) because the bus driver failed to prevent fellow passengers from attacking the plaintiff. 946 P.2d at 543. The division concluded that "the provision of security is not essential to the public employee's 'operation' of a motor vehicle" because a bus driver's responsibility to supervise its passengers did not implicate the physical control of the bus. *Id.* at 544. Therefore, the division concluded that RTD did not waive its immunity. *Id.*

¶ 18 Consistent with *Harris*, the division in *Young* recently concluded that a driver's responsibility to ensure that his restrained passengers were safely loaded into a van constituted the "operation of a motor vehicle." *Young*, ¶¶ 20–21 (stating that securing of handcuffed juveniles was a function of the van driver because the juveniles had no ability to secure the seatbelts themselves).

¶ 19 Although the *Young* division distinguished *Stockwell*, it did not undermine or disagree with its substantive conclusion. Unlike in *Stockwell*, where the bus driver's supervisory obligation did not require a physical action, in *Young*, the van driver's responsibility to secure handcuffed juveniles entailed a physical action that implicated the operation of the vehicle. *See id.* at ¶ 20. For this reason, the division concluded that the county had waived its immunity. *Id.* at ¶ 22.

¶ 20 These cases demonstrate that while waivers are to be construed broadly in favor of the victim, "operation" does not extend to all tortious acts occurring on a public vehicle; rather, they are limited to a driver's physical control over the function of a motor vehicle. *See id.* at ¶ 20; *Harris*, 15 P.3d at 784; *Stockwell*, 946 P.2d at 544. We agree with this interpretation and rely on *Stockwell's* holding that "operation of a motor vehicle" does not extend to a bus driver's failure to supervise passengers on a bus because supervision does not require a physical manifestation of operation of a motor vehicle.

¶ 21 Our conclusion is reinforced by out-of-state decisions that exclude supervision from "operation of a motor vehicle." Specifically, we rely on state court decisions from Ohio, Pennsylvania, and Texas that have governmental immunity statutes with waiver provisions similar to the one at issue here. *See* Ohio Rev.Code Ann. §§ 2744.02(A)(1) and (B)(1) (West 2014) (providing immunity to government entities unless injury is caused by negligent operation of any motor vehicle by employees within the scope of employment); 42 Pa. Cons.Stat. § 8542(b)(1) (2014) (waiving governmental immunity for injuries arising from the operation of any motor vehicle in the possession or control of the local agency); Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (West 2014) (waiving governmental

immunity for injuries arising from the use of motor vehicles).

¶ 22 Courts in these states have concluded that a bus driver's supervision of its passengers does not constitute "operation of a motor vehicle." *See Doe v. Marlington Local Sch. Dist. Bd. of Educ.*, 122 Ohio St.3d 12, 907 N.E.2d 706, 711–12 (2009) (finding no waiver of governmental immunity for a sexual assault that occurred on a school bus which allegedly arose out of a driver's failure to supervise students because supervision does not constitute operation of a school bus); *see also Miller v. Van Wert Cnty. Bd. of Mental Retardation & Dev. Disabilities*, 2009–Ohio–5082, 2009 WL 3068807 (Ohio Ct. App.2009) (concluding that a bus driver's negligent supervision of a child safely exiting a school bus did not implicate operation of a vehicle); *Doe v. Dayton City Sch. Dist. Bd. of Educ.*, 137 Ohio App.3d 166, 738 N.E.2d 390, 394 (1999) (stating a driver's failure to prevent sexual assault on a bus did not implicate a driver's operation of the bus); *Rosenau v. East Stroudsburg Sch. Dist.* 15 Pa. D. & C. 5th 392, 395–97 (Pa.Com.Pl.2010) (finding no waiver of governmental immunity for an assault claim that occurred on a school bus because a driver's failure to supervise a student's behavior does not constitute operation of a vehicle); *Quaste v. Hayes*, 36 Pa. D. & C.3d 308, 310 (Pa.Com.Pl.1985) ("We do not believe alleged lack of supervision of students riding as passengers on a school bus can reasonably be construed to be an element of "operation" of that vehicle."); *Breckenridge Indep. Sch. Dist. v. Valdez*, 211 S.W.3d 402, 408 (Tex.App.2006) (stating negligent supervision does not waive immunity because supervision is not part of operation of a motor vehicle); *Estate of Garza v. McAllen Indep. Sch. Dist.*, 613 S.W.2d 526, 527–28 (Tex.App.1981) (same).

¶ 23 Robinson nevertheless contends that the enforcement of the seating assignment directive implicated the operation of the school bus. However, she did not submit a copy of the seating assignment directive in her complaint or in her response to the district's motion to dismiss.

¶ 24 Further, although her briefs referred to the seating assignment directive as a "policy," her complaint did not refer to it as such. Robinson's complaint only reveals that the school district ordered "assignment by age of the bus seats, with the youngest sitting up front and the older children in the back" in response to "previous rowdy behavior by the children." Based on the record, we cannot verify Robinson's contention that the seating assignment directive implicated the physical operation of a motor vehicle. *See Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 926 (Colo.1993) (requiring trial courts to conduct hearings to determine the facts necessary to definitely resolve all disputed issues of immunity). Thus, based on the record, we do not know if there was in fact a policy, and if so, what its contours were.

¶ 25 Moreover, Robinson cursorily alleges that the seating assignment implicated operation of a motor vehicle because the bus driver braked and ordered her son to be seated when she saw him out of his seat. This assertion further suggests that the bus driver had a duty to supervise the seating of all the students. However, as noted above, supervision is not part of the operation of a motor vehicle.

¶ 26 Thus, we conclude that *Harris* and *Young* are distinguishable because a bus driver's supervision of students' conduct on a bus does not involve the physical control of the function of a motor vehicle. In *Harris*, 15 P.3d at 784, the plaintiff was injured because the bus driver failed to physically clear the bus steps, and in *Young*, ¶¶ 12–18, the plaintiff was injured because the driver failed to physically secure the handcuffed juveniles in the van.

¶ 27 Here, however, Robinson's injuries did not stem from the bus driver's failure to perform a physical act. Rather, C.R. incurred injuries because of third-party assaults by fellow passengers as in *Stockwell*, 946 P.2d at 544. Following *Stockwell*, we therefore conclude that a bus driver's failure to secure a bus passenger from third-party assaults by fellow passengers does not implicate operation of a motor vehicle. *See Stockwell*, 946 P.2d at 544; *see also Marlington*, 907 N.E.2d at 711–12; *Miller*, 2009–Ohio–5082, 2009 WL 3068807; *Dayton City*, 738

N.E.2d at 394; *Rosenau*, 15 Pa. D. & C. 5th at 395–97; *Quaste*, 36 Pa. D. & C.3d at 310; *Valdez*, 211 S.W.3d at 408; *Estate of Garza*, 613 S.W.2d at 527–28.

¶ 28 In applying the cases to the circumstances here, we conclude that the district did not waive its sovereign immunity under section 24–10–106(1)(a). Thus, the trial court erred in denying the district's motion to dismiss for lack of subject-matter jurisdiction.

### III.  Conclusion

¶ 29 The judgment is reversed in part and the case is remanded to the district court to dismiss the complaint.

JUDGE FURMAN and JUDGE DUNN concur.