[No. 6551.]

## NUTT v. DAVISON.

1. BAILMENT—*Negligence of Bailee Presumed*—Where goods are delivered to bailee in good condition, and are returned injured or in defective condition, or not at all, a presumption of negligence on the part of the bailee at once arises, and the burden is upon him, if he would exonerate himself, to show due care.

2. ——*Directions of Bailor*—The bailee of live stock complies with the instructions of the bailor, as to the place of their keep; but these instructions are given upon the representations of the bailee, the bailor having no acquaintance with the locality. Loss ensues by reason of the unsuitableness of the place. The bailee is liable.

If in such case the pasture where the animals are at first kept, by direction or consent of the bailor, becomes unsuitable by reason of a change of condition, it is the duty of the bailee to either take such action as a reasonably prudent person would to preserve the animals in unimpaired condition, or to promptly inform the bailor of such change of conditions.

3. INSTRUCTIONS—*Conficting—Not Warranted by Evidence—Shifting Burden of Proof*—Instructions which are directly in conflict, upon a material question, constitute fatal error.

So instructions which are directed to a supposed state of facts not established by the evidence.

Or an instruction which devolves upon one party the burden of proof which the law imposes on the other

*Error to Montrose District Court.*—Hon. SPRIGG SHACK-LEFORD, Judge.

Mr. S. S. SHERMAN, for plaintiff in error.

Messrs. BELL, CATLIN & BLAKE and Mr. P. W. MOTH-ERSILL, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

This is an action brought by a bailor against a bailee in whose exclusive and immediate possession the property bailed, or a portion thereof, suffered injury and was destroyed. The judgment was in favor of the bailee and the bailor brings the cause here for review. The subject of bailment was approximately four hundred head of cattle, entrusted to the bailee for a fee, to be cared for during a specified time, upon a designated cattle range, and at the expiration of the term returned to the bailor. The greater portion of the cattle were received by the bailee April 1st, and the remainder May 20th. Between these dates at least ten of the first herd had died, of which fact the bailee had knowledge, but did not apprise the bailor thereof when he received the second herd, though at that time he asked of the bailor, and received of him personally, a check in part payment for his services under the contract of bailment. During the first sixty days of the term ninety-seven head of the

cattle died. It was the contention of the bailor that the cattle died from starvation and exposure by reason of confinement in a pasture, at a high altitude, not sufficiently supplied with food and shelter, while the defendant claimed they were placed and kept therein temporarily by direction of the plaintiff.

Over the objection and exception of plaintiff the court instructed the jury, in effect, that before the plaintiff could maintain his cause of action and recover against the defendant, he must show the cause of the death of the cattle and that they died only by reason of the negligence of the bailee, and of what that negligence consisted. We think the court erred in so instructing the jury. While the authorities are in conflict, the greater weight thereof and the better reason place the duty upon the bailee to satisfactorily explain the non-delivery of the thing bailed, or its delivery in an injured condition such as only culpable carelessness would probably have caused.

The general rule is, that in cases where the evidence shows that the property was delivered to the bailee in good condition and returned damaged, or not at all, the presumption of negligence on the part of the bailee instantly arises, making a *prima facie* case in favor of the bailor, and thereupon the bailee is under the necessity, if he would escape liability, of showing that the damage or loss was not due to his negligence. This may be done, *inter alia*, by showing that he exercised a degree of care, under all the facts and circumstances, sufficient to overcome the presumption of negligence.—*Union Pacific R. R. Co. v. Stupeck,* 50 Colo. 151; Schouler's Bailments and Carriers, (3d Ed.), sec. 23; 5 Cyc., p. 217; 3 Am. & Eng. Ency. of Law, (2d Ed.), p. 750; *Funkhouses v. Wagner,* 62 Ill. 59; *Higman v. Camody,* 112 Ala. 267.

The rule rests upon the consideration that where the bailee has exclusive possession, the facts attending loss or injury must be peculiarly within his own knowledge. Besides, the failure to return the property, or its return in an injured condition, constitutes the violation of a contract, and it de-

volves upon the bailee to excuse or justify the breach. A clear summary of the law, as to the liability of the bailee for loss or injury to the thing bailed, is found in a note to section 23 of Schouler's Bailments and Carriers, *supra*, where it is said:

"Admitting the danger of wide generalizations on this subject, and granting the force of special circumstances in each case, we may perhaps fairly reach these conclusions: (1) That the bailor who charges his bailee with losing or injuring the thing bailed to him, must make out his *prima facie* case; that is, he must show the creation of the particular bailment in fact, and the delivery on his own part of the specified thing in due condition, with corresponding acceptance by the bailee; also, the bailee's default of final delivery over, or else the final delivery of the thing in unsuitable condition, as the case may be. And whatever might obstruct a *prima facie* showing to this point, and justify an inference that the thing was injured by himself or his agents, or by his or their participation in the mischief, or that its inherent qualities would naturally have developed the mischief,—all this the plaintiff must overcome to make out his case. (2) The *prima facie* case being thus made out as claimed, showing (a) that the property bailed for a certain purpose was not delivered back or over at all by the bailee as contemplated, or (b) that when delivered over it was found so damaged that probably the bailee or his agent caused the injury, the inference is deducible that the bailee is to blame and must answer. And now it rests upon the defendant bailee to explain the loss and exonerate himself; which he may do by showing (a) that the loss or damage was due to some special cause which ought specially to excuse him; or (b), more generally, that he, the bailee, was not culpably negligent. * * * (3) But if the bailee, under such circumstances, shows some cause of loss or damage to the thing, such as ought legally to excuse him, he need not go further and prove affirmatively that no negligence on his part operated in producing that cause; but may rest upon a showing which, on the face of it,

leaves him sufficiently exonerated. The burden now shifts back to the plaintiff bailor, who is to overcome, if he can, the bailee's *prima facie* exoneration."

Moreover, the instruction under consideration is in conflict with Instruction No. 3, wherein the duty of overcoming the presumption of negligence, arising from the failure to return the property, was properly placed upon the bailee. Those instructions were upon a material point in the case. The latter stated a correct principle of law applicable to the facts of the case. The former misdirected the jury in that respect. This constitutes reversible error, as it is impossible to determine by which instruction the jury were guided in arriving at their verdict. When we bear in mind that the bailee, according to his own contention, had the immediate possession and control of the cattle, in a particular and limited space, and the great number that died within so short a period after the bailee received them, it is evident that the duty devolved upon the bailee to come forward and show that the death of the cattle arose from no fault of his. Under such circumstances the fact of death alone would hardly be a satisfactory explanation of the non-delivery. It might be otherwise if the number of deaths was not excessive.

The jury were likewise instructed that the bailee would not be responsible for the place where he kept, or the manner in which he handled the cattle, if he obeyed the directions of the bailor in that respect. The facts of the case did not warrant the instruction. The bailor claimed that the cattle were to be kept upon a particular range, and the bailee, while admitting that to be the contract generally, claimed that by express direction of the bailor the cattle were to be kept in a pasture until they became accustomed to the locality. The bailor had no knowledge of the pasture or the food supply therein, while these matters were all within the knowledge of the bailee. Moreover, according to the bailee, the bailor had given such directions upon the representation by the bailee that the pas-

ture was a suitable place, supplied with sufficient food in which to properly keep the cattle. Under these circumstances, the law imposed upon the bailee the duty of exercising that degree of care in respect to the property which a man of average prudence and diligence would bestow on his own property under like conditions and circumstances, and which the law denominates "ordinary care." The care thus required is illustrated in Schouler's Bailments and Carriers, section 137, as follows:

"Let us take, for example, a case by far the most familiar under this head to English and American courts, namely, that of a horse hired for use. Now, unless the bailee took the animal for too short a time, or under a special arrangement whereby the bailor was to look after his own property, he ought to provide the creature regularly with proper food and drink, afford due shelter and repose, and, in general, take reasonable heed that the animal, while resting, is so fastened up that it may not readily run away or be stolen. While putting the horse to active use he should not harness carelessly, overload, overdrive, be heedless of what he perceives to be the creature's frailties, nor fail to supply, prudently, wants essential to its health and good condition. If disease or bruise be discovered during the bailee's term, he should be discreet in its treatment, and in extremity call in some farrier or expert; or else informing his bailor promptly, throw the responsibility, as he may generally do, upon the owner. He should not take dangerous risks of travel. During his whole term of the use the bailee ought to act honorably, humanely, and with such reasonable regard for preserving the animal's value unimpaired as from prudent men might be expected."

Were we to assume that the pasture, when the cattle were first placed therein by directions from the bailor, was supplied with sufficient food and was a proper place in which to keep them until they had been accustomed to the range, nevertheless, if it became apparent to a reasonably prudent person that

the subsequent condition of the pasture, by reason of snow, the lack of food or other causes, rendered it an unfit and improper place in which to keep the cattle, it thereupon became the duty of the bailee to take proper action and precaution, such as a reasonably prudent person would taken under like circumstances, to preserve the cattle unimpaired, or inform the bailor promptly of the changed conditions and thereby place the responsibility upon the latter.

We can not commend the complaint as a model pleading. It contains much surplusage, and many allegations are found therein that should properly be embodied in a replication. However, this does not remove the prejudice arising from the giving of erroneous, inconsistent and conflicting instructions. If all the facts of the case and the presumptions arising therefrom, show that the loss of the cattle was due to some special cause which ought specially to excuse the bailee, or that the latter was not culpably negligent, the alleged cause of action fails and the plaintiff can not recover; otherwise, he can, the bailment and loss being admitted. Under such circumstances it would be wholly immaterial as to which of the parties furnished the proof. But that is a different matter from telling the jury that the proof of certain facts devolve upon the plaintiff when the law presumes their existence without proof, unless the contrary is shown. The plaintiff was undoubtedly under the necessity of establishing his case by a fair preponderance of the evidence, but he was not called upon, under the facts and circumstances of this case, to assume the burden placed upon him by the instructions. The judgment is reversed.

Decision *en banc.*