No. 19,589.

THE BANKERS WAREHOUSE COMPANY *v.* A. W. BENNETT, D/B/A BENNETT DISTRIBUTING CO.

(365 P. [2d] 889)

Decided November 6, 1961.

Messrs. WORMWOOD, O'DELL and WOLVINGTON, Mr. CHARLES M. DOSH, for plaintiff in error.

Messrs. HENRY and KEATING, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to the parties as follows: plaintiff in error as the warehouse or defendant, and defendant in error as Bennett or plaintiff.

Plaintiff is a dealer in nuts. He alleged in his complaint that between March 30 and June 12, 1956, he stored with the warehouse approximately 25,000 pounds of nut meats; that three separate warehouse receipts were issued to him upon delivery of the shipment to the warehouse; and that the said nut meats were received by the warehouse in good condition. He further alleged that defendant:

" * * * did not exercise that degree of care in the safekeeping of said nut meats entrusted to it which it was bound to exercise in maintaining and preserving the said nut meats, and as a result of said lack of care, all of said nut meats became contaminated and acquired a foreign odor and smell and an objectionable taste, and thereby became unfit for the use for which the nut meats were intended, and the same became unsaleable in the normal course of trade and business."

Plaintiff sought damages allegedly sustained by reason of the contamination of the nut meats while stored in the defendant's warehouse. Against the full amount of damages allegedly sustained, plaintiff credited the sum of $5,548.83, the amount received by him upon sale of the nut meats following contamination.

By answer defendant denied any negligence on its part, and alleged that any damage sustained by plaintiff was, " * * * due to causes not originating in the warehouse and beyond the control of this defendant"; that the warehouse receipt issued to plaintiff and accepted by him contained a stipulation that the defendant would not

be responsible for any loss occasioned by, " * * * any cause not originating in the warehouse or by any cause beyond the control of the warehouseman"; and that the defendant had at all times exercised that degree of care with regard to said nut meats, which would ordinarily be exercised by a reasonably careful owner of similar merchandise in protecting the same from damage. Defendant further alleged that the plaintiff had failed to promptly dispose of the said nut meats in such manner as to mitigate the damages, and sought by counterclaim to recover the sum of $102.66 claimed to be due for storage.

Trial to the court resulted in findings and judgment for the plaintiff in the amount of $16,428.52 and costs. The court's findings of fact contained the following:

"It will be the finding of the court that the nuts involved in this case, from the testimony produced, arrived in marketable condition, and that sometime during the summer of 1956 they became contaminated by the odor complained of. * * * "

By this language the trial court referred to the arrival of the nut meats at the warehouse and it is unquestioned that "during the summer of 1956" the warehouse had complete control over the merchandise. We have read the transcript of evidence and find ample support therein to sustain the findings in this particular.

It is argued here by counsel for defendant that plaintiff failed as a matter of law to sustain the burden of proof in establishing the negligence, or the lack of due care of the defendant.

Further findings of the trial court relating to the clause in the receipts issued by the warehouse, which provided immunity from liability for damage "by any cause not originating in the warehouse or by any cause beyond the control of the warehouseman," were as follows:

"It is the finding of the court, under the testimony as brought out, that the cause was within the warehouse,

from some cause which was known or should have been known by the liability as set forth in the statute, was known or should have been known by Bankers Warehouse, so that it was originating inside the warehouse and was under the control of the Bankers Warehouse."

There is sufficient competent evidence shown by the record to support this finding.

■ Defendant argues in effect that some specific act of omission or commission must be shown by plaintiff to establish negligence on the part of the warehouse. The transaction involved amounts to a bailment, subject to the provisions of C.R.S. '53, 146-2-1, et seq., dealing generally with "Warehouses." 146-2-14 provides in pertinent part:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonable, careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care. * * * "

The court properly found, as we must in this case, that the nut meats were received by the warehouse in good marketable condition, and the question is, whether the warehouseman, if he had been the owner engaged in the sale, storage and distribution of nut meats, would permit them to be stored with or come in contact with anything which would impregnate them with an odor of moth balls or naphthalene, as occurred in the instant case. One engaged in such a business would presumably know of the susceptibility of nut meats to absorb or acquire the taste and odor of such substance, and take measures to guard against resulting contamination.

■ Defendant was bailee of the nut meats. The plaintiff offered testimony establishing that the nuts were contaminated when withdrawn from the warehouse. No specific acts of negligence were shown. Under the law applicable to such a situation a presumption of

negligence on the part of the bailee at once arises, and the burden of going forward with evidence to overcome this presumption rested on the defendant. *Nutt v. Davison,* 54 Colo. 586, 131 Pac. 390; *Wheelock Bros. Inc. v. Bankers Warehouse Company, et al.,* 115 Colo. 197, 171 P. (2d) 405. Here it was incumbent upon the defendant to show that the nut meats were not contaminated by reason of its negligence. This it failed to do.

█ The effect of the rule requiring the bailee to meet the presumption of negligence arising under such circumstances, is to place the burden upon the one best able to discharge it. While some confusion exists in the decisions from other jurisdictions, this court has adopted the reasoning of the Court of Appeals of Indiana in the case of *Holt Ice & Cold Storage Co. v. Arthur Jordan Co.,* 25 Ind. App. 314, 57 N. E. 575, from which we quote the following:

" * * * But the better reason underlies the doctrine, and it is supported by the weight of modern authority, that when a plaintiff has shown that the bailee received the property in good condition, and failed to return it or returned it damaged, he has made out a prima facie case of negligence. An essential part of every bailment contract is the obligation to deliver over the property at the termination of the bailment. The bailor must prove the contract, the delivery of the goods to the bailee, and their return in a damaged condition. When he has done this, the inference is deducible that the bailee is at fault and must answer, and especially is this true if the loss could not ordinarily have occurred without negligence. His failure to return the goods as delivered to him is inconsistent with what he agreed to do. The property was in his possession, under his care and oversight, and away from that of the bailor, who in most cases could not know under what circumstances it was damaged. Generally speaking, the onus probandi is upon the party who has to free himself from liability by proof of facts

the knowledge of which is peculiarly within his own power, rather than of his adversary. * * * "

Other points argued are without substantial merit. It cannot be said from the record in this case as a matter of law that plaintiff failed to act in a reasonable manner in his efforts to dispose of the damaged product. There was no failure to mitigate the damage. The warehouse was given all the credit to which it was entitled on account of the sale of the damaged merchandise.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE DAY concur.