THOMPSON CREEK TOWNHOMES,
LLC, Plaintiff–Appellant,

v.

TABERNASH MEADOWS WATER
AND SANITATION DISTRICT,
Defendant–Appellee.

No. 09CA1663.

Colorado Court of Appeals,
Div. V.

June 10, 2010.

Benjamin, Bain & Howard, LLC, Alvin M. Cohen, Greenwood Village, Colorado, for Plaintiff–Appellant.

Karsh, Fulton, Gabler & Joseph, P.C., Seymour Joseph, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge GRAHAM.

A real estate developer sought to compel a water and sanitation district to reserve and make available a number of water taps. Its claim seeking specific performance was dismissed on summary judgment in favor of the district. Because we conclude that the trial court correctly determined that it could not order specific performance against the district, we affirm.

## I. Introduction

Thompson Creek Townhomes, LLC (Thompson Creek) filed a suit for breach of contract and promissory estoppel against the Tabernash Meadows Water and Sanitation District, seeking specific performance and money damages for the District's failure to reserve water taps for Thompson Creek's residential development. The District filed a motion to dismiss, which the court considered to be a summary judgment motion because the underlying operative facts were undisputed. The court granted summary judgment dismissing Thompson Creek's specific performance and promissory estoppel claims. The remaining claims were dismissed by stipulation.

## II. Background

In 2005, First Community Bank (the Bank) acquired a parcel of real property known as Lot 16 through foreclosure. At that time,

the District had a policy of reserving water and sewer taps for landowners who paid "availability of service charges." These charges were calculated based on fifty percent of the monthly cost for the sewer and water service, and were to be paid quarterly. When the Bank acquired Lot 16, the availability of service charges had not been paid for approximately three years. Although the Bank paid past due amounts to the District when it foreclosed on the property, it elected to defer any newly accumulating charges until the lot was sold, so that such charges could be paid from the closing proceeds.

In 2006, Lot 16 was sold to Thompson Creek. Before Thompson Creek closed on the property, the District announced that it would no longer reserve taps in exchange for availability of service charges and would only reserve taps if they were purchased outright. The District then notified the Bank that, because it was not current on its availability of service charges, no taps would be reserved for Lot 16 until they were purchased.

Thompson Creek closed on Lot 16 in early 2007, and the Bank transferred all its contractual rights related to Lot 16 to Thompson Creek. The Bank tendered payment for the accrued availability of service charges upon closing, but payment was rejected by the District.

This lawsuit by Thompson Creek followed, in which it asserted claims for breach of contract and promissory estoppel, seeking specific performance and money damages. In granting the District's motion to dismiss, the district court treated the motion as one for summary judgment and ruled that Thompson Creek could not assert a claim for specific performance or promissory estoppel against the District. Thompson Creek appeals only that part of the judgment dismissing the claim for specific performance.

### III.  Standard of Review

Summary judgment is proper if the pleadings and supporting documentation show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.2004). We review a district court's order granting summary judgment de novo, applying the same principles that guided its determination whether summary judgment was proper. *Western Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo.App.2008).

### IV.  Analysis

■ The doctrine of sovereign immunity, which insulates states from liability for negligence, was abrogated in Colorado by *Evans v. Board of County Commissioners*, 174 Colo. 97, 104–06, 482 P.2d 968, 972 (1971). Acting in response to *Evans*, the Colorado General Assembly adopted the Governmental Immunity Act, §§ 24–10–101 to –120, C.R.S. 2009, which applies the doctrines of sovereign immunity and governmental immunity, insulating public entities "from liability in all claims for injury which lie in tort or could lie in tort," but waiving the defense of immunity for injuries resulting from specified activities and conditions, none of which is pertinent here. § 24–10–106, C.R.S.2009. The concept of sovereign immunity, based upon the maxim that the "king can do no wrong," is broader than simply insulating a sovereign from liability for tort; it also extends to contract claims. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 695, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

In *Larson*, the head of the War Assets Administration sold surplus coal to the plaintiff and later entered a separate contract to sell it to others. Mr. Larson sued to compel delivery of the coal. The Court considered the suit for specific relief to be against the sovereign even though it was brought against an official of the sovereign because it would disturb property of the sovereign. *Id.* at 689, 69 S.Ct. 1457. The Court also indicated that it saw a distinction between suits for damages and suits for specific relief:

> It is argued that the principle of sovereign immunity is an archaic hangover not consonant with modern morality and that it should therefore be limited wherever possible. There may be substance in such a viewpoint as applied to suits for damages. The Congress has increasingly permitted such suits to be maintained against the sovereign and we should give hospitable scope to that trend. But the reasoning is

not applicable to suits for specific relief. For, it is one thing to provide a method by which a citizen may be compensated for a wrong done to him by the Government. It is a far different matter to permit a court to exercise its compulsive powers to restrain the Government from acting, or to compel it to act.

*Id.* at 703–04, 69 S.Ct. 1457 (footnote omitted).

■ Colorado has long recognized, even prior to its abrogation of the sovereign immunity doctrine, that where the state or one of its governmental entities enters into a contract, "it thereby waives immunity from suit." *Ace Flying Serv., Inc. v. Colo. Dep't of Agric.,* 136 Colo. 19, 22, 314 P.2d 278, 280 (1957).

■ The question whether a state or governmental entity waives immunity from being compelled to specifically perform contractual duties—as opposed to being liable for damages sustained as a result of the government's breach—lay dormant until the decision in *Wheat Ridge Urban Renewal Authority v. Cornerstone Group XXII, L.L.C.,* 176 P.3d 737 (Colo.2007) (*Wheat Ridge*). *Wheat Ridge* involved a dispute in which a developer filed suit against the Wheat Ridge Urban Renewal Authority and the City of Wheat Ridge when the Authority failed to condemn parcels of private land as required by a contract between the developer and the Authority. The action, like the action before us, was not barred by sovereign immunity because "[i]n contrast to the United States Supreme Court, but like a minority of other states, a plurality of [the Colorado Supreme Court] has held that 'when a state enters into authorized contractual relations it thereby waives immunity from suit.'" *Id.* at 744–45 (footnote omitted) (quoting *Ace,* 136 Colo. at 22, 314 P.2d at 280). This rule also applies to local governmental units, like water and sanitation districts. *Spaur v. City of Greeley,* 150 Colo. 346, 348, 372 P.2d 730, 731 (1962). However, the *Wheat Ridge* decision explained that "neither *Ace* nor any subsequent reliance on it by this court involved a claim of specific performance for breach of contract, and the question of that equitable remedy

has never been addressed by this court." *Wheat Ridge,* 176 P.3d at 745.

In considering the developer's claim for specific performance, *Wheat Ridge* explained that, while under *Ace* the state waives immunity from suit when it enters into a contract, an action for specific performance "implicates an additional concern for the separation of governmental powers." *Id. Wheat Ridge* relied upon *Larson* for the proposition that "there are 'the strongest reasons of public policy' for the rule that specific performance cannot be had against the sovereign." *Id.* (quoting *Larson,* 337 U.S. at 704, 69 S.Ct. 1457). *Wheat Ridge* held that an action for specific performance of a core governmental power like eminent domain could not lie against the sovereign. *Id.* at 746.

■ Thompson Creek argues that *Wheat Ridge* allows a contracting party to seek specific performance against the sovereign if the performance it seeks involves a non-core governmental power. According to Thompson Creek, the reservation of water taps did not involve a core governmental power, and consequently, a contractual obligation to reserve those taps can be specifically enforced. We do not read *Wheat Ridge* so narrowly to require that an activity must be a core governmental power in the nature of condemnation, for example, in order to insulate a governmental entity from specific performance. *Wheat Ridge* relied upon *Larson*'s broad language regarding the perils of "the interference of the [c]ourts with the performance of the ordinary duties of the executive departments of the government" when it prohibited an action for specific performance to lie against the sovereign. *Id.* at 745 (quoting *Larson,* 337 U.S. at 704, 69 S.Ct. 1457).

■ *Wheat Ridge* suggested that the General Assembly may determine the availability of equitable relief for governmental breach of contract in cases not involving eminent domain, such as this one. The General Assembly has not done so. Thompson Creek cites no Colorado case or statute that allows an action for specific performance to lie against the sovereign as a contractual remedy. Moreover, we are aware of no statute or decision in any United States jurisdiction that allows for such a remedy. We read

*Wheat Ridge* in this context of overwhelming authority prohibiting the enforcement of specific performance against the sovereign as a contractual remedy and hold that it prohibits Thompson Creek's action for specific performance here.

Under these circumstances, we conclude that the trial court properly determined that it could not order specific performance.

The judgment is affirmed.

Judge RUSSEL and Judge LICHTENSTEIN concur.