2014 COA 18

Heather FOSTER, Plaintiff–Appellee,

v.

The BOARD OF GOVERNORS OF THE COLORADO STATE UNIVERSITY SYSTEM, BY AND ON BEHALF OF COLORADO STATE UNIVERSITY, Defendant–Appellant.

Court of Appeals No. 13CA0280

Colorado Court of Appeals,
Div. VII.

Announced February 27, 2014

Larimer County District Court No. 12CV 1374, Honorable Daniel J. Kaup, Judge

Erik G. Fischer, P.C., Erik G. Fischer, Gordon M. Hadfield, Fort Collins, Colorado, for Plaintiff–Appellee

John W. Suthers, Attorney General, Russell E. Yates, Special Assistant Attorney General, Dart M. Winkler, Special Assistant Attorney General, Matthew S. Mersfelder, Special Assistant Attorney General, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE J. JONES

¶ 1 This case arises from a fire at Colorado State University's Equine Reproduction Laboratory (the Lab) that destroyed plaintiff Heather Foster's property. Defendant, the Board of Governors of the Colorado State University System (CSU),[1] appeals the district court's order denying its motion to dismiss Ms. Foster's claim for breach of an oral bailment contract based on immunity under the Colorado Governmental Immunity Act (CGIA). CSU's entitlement to immunity under the CGIA turns on whether Ms. Foster's claim lies in tort or could lie in tort. Because we conclude that a claim for destruction of property subject to a bailment lies in tort or could lie in tort, we reverse the district court's order and remand the case with directions for the district court to consider and rule on Ms. Foster's contention that an exception to CGIA immunity applies.

## I. Background

¶ 2 Ms. Foster and the Lab agreed orally that the Lab would provide reproductive treatment to Ms. Foster's prize-winning stallion. Pursuant to that agreement, the Lab collected ten "straws" of semen from the stallion to be used for in vitro fertilization, and Ms. Foster and the Lab entered into a bailment relationship, pursuant to which the Lab (the bailee) stored the straws in its specialized storage facility, and Ms. Foster (the bailor) paid the Lab a monthly fee.

¶ 3 Less than two years later, a fire destroyed the Lab and most of its contents, including the semen straws from Ms. Foster's stallion. The fire department investigated the fire but was not able to determine its cause.

¶ 4 Ms. Foster sued the Lab, asserting a claim for breach of an oral contract for bailment. CSU moved to dismiss the complaint pursuant to C.R.C.P. 12(b)(1) based on lack of subject matter jurisdiction under the

1. Ms. Foster's complaint named the Lab as the defendant. CSU filed a motion to dismiss asserting that the Lab is not an independent entity that can sue or be sued, and that the proper defendant is the "Board of Governors of the Colorado State University System, by and on behalf of the Colorado State University." Ms. Foster concedes the misnomer in her answer brief filed in this appeal, indicating that the parties have agreed to amend the caption after resolution of this appeal. Given the parties' agreement as to the proper defendant, however, we see no need to wait, and therefore we substitute the Board of Governors for the Lab as the named appellant.

CGIA, §§ 24–10–101 to –120, C.R.S.2013. Specifically, CSU argued that it is immune from Ms. Foster's suit because her claim lies in tort or could lie in tort. *See* § 24–10–106(1).

¶ 5 After hearing arguments on the motion, the district court determined that the facts material to whether Ms. Foster's claim lies in tort or could lie in tort for purposes of the CGIA are not in dispute. The court therefore concluded that an evidentiary hearing was unnecessary.

¶ 6 The court subsequently issued a written order denying CSU's motion to dismiss. The court disagreed with CSU's assertion that Colorado courts have determined bailment claims to be tort claims, saying that "[t]he fact that courts use language of negligence when addressing bailments is not dispositive of whether a breach of duty under a bailment sounds in tort." Rather, the court found "as a matter of law that the relationship between these parties is based solely on an oral contract for storage in exchange for payment by [Ms. Foster]." The nature of CSU's liability (if any), the court reasoned, must therefore arise from that contract.

¶ 7 The court was also not persuaded that Ms. Foster's claim *could* lie in tort because it found "no indication that [she] could prevail on any tort claim given the allegations in her complaint." The court reasoned that because Ms. Foster sought only economic damages and the Lab had not allegedly breached an independent duty of care, any potential tort claim Ms. Foster might bring would be precluded by the economic loss rule. Having concluded that Ms. Foster's claim does not and could not lie in tort, it ruled that Ms. Foster had established that CSU does not enjoy immunity under the CGIA.

¶ 8 CSU appeals pursuant to section 24–10–108.

## II. Discussion

¶ 9 The sole issue on appeal is whether Ms. Foster's claim for damages for the destruction of her bailed property lies in tort or could lie in tort for purposes of the CGIA. We conclude that it does lie in tort, or that it could lie in tort.

### A. Standard of Review·

¶ 10 The applicability of immunity under the CGIA is an issue of subject matter jurisdiction to be determined by the district court in accordance with C.R.C.P. 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271, 276 (Colo. 1995); *Young v. Jefferson Cnty. Sheriff*, 2012 COA 185, ¶ 7, 292 P.3d 1189. "When the alleged jurisdictional facts are in dispute, the trial court should conduct an evidentiary hearing before ruling on the jurisdictional issue." *Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176, 1180 (Colo.2001); *accord Colucci v. Town of Vail*, 232 P.3d 218, 222 (Colo.App. 2009); *see Trinity Broad. of Denver, Inc. v. City of Westminster*, 848 P.2d 916, 924–47 (Colo.1993). But where, as here, the relevant facts are undisputed, the issue of governmental immunity is one of law, and the district court may rule on the jurisdictional issue without a hearing. *Padilla*, 25 P.3d at 1180. In such a case, we review the district court's jurisdictional ruling de novo. *Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 81 (Colo.2003); *Colo. Special Dists. Prop. & Liab. Pool v. Lyons*, 2012 COA 18, ¶ 14, 277 P.3d 874; *Colucci*, 232 P.3d at 219.

### B. Applicable Law

#### 1. CGIA Immunity

¶ 11 Subsection 24–10–106(1) of the CGIA provides: "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section."

¶ 12 The CGIA immunity provision does not apply to claims for breach of contract. *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258 (Colo.1996); *Bd. of Cnty. Comm'rs v. DeLozier*, 917 P.2d 714, 715 (Colo.1996); *Patzer v. City of Loveland*, 80 P.3d 908, 910 (Colo.App.2003). But, as subsection 24–10–106(1) says, neither the form of the claim itself nor the relief requested determines whether the claim is one which lies in tort or could lie in tort. *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo.2008); *Berg*, 919 P.2d at 258; *DeLozi-*

*er,* 917 P.2d at 715–16; *Lehman v. City of Louisville,* 857 P.2d 455, 457 (Colo.App.1992); *see Robinson v. Colo. State Lottery Div.,* 179 P.3d 998, 1005 (Colo.2008) ("[T]he CGIA is less concerned with what the plaintiff is arguing and more concerned with what the plaintiff could argue.").

■ ¶ 13 Because the meanings of "tort" and "could lie in tort" are vague, the inquiry into whether a public entity is immune under the CGIA is often difficult. *City of Colo. Springs v. Conners,* 993 P.2d 1167, 1172 (Colo.2000). In general, we consider the nature of the injury and the relief sought, though neither is determinative. *Robinson,* 179 P.3d at 1003. "[U]ltimately, [the inquiry] turns on the source and nature of the government's liability, or the nature of the duty from the breach of which liability arises." *Brown Grp. Retail,* 182 P.3d at 690.

■ ¶ 14 "The essential difference between a tort obligation and a contract obligation is the source of the parties' duties." *Carothers v. Archuleta Cnty. Sheriff,* 159 P.3d 647, 655 (Colo.App.2006); *accord Casey v. Colo. Higher Educ. Ins. Benefits Alliance Trust,* 2012 COA 134, ¶ 16, 310 P.3d 196. Tort duties are those protecting against the risk of physical harm to persons or property; such duties are implied by law without regard to any contract. *Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1262 (Colo. 2000); *Adams v. City of Westminster,* 140 P.3d 8, 11 (Colo.App.2005); *see Casey,* ¶ 16; *see also Conners,* 993 P.2d at 1173 (governmental immunity is immunity from actions seeking compensatory damages for personal harms or injuries). Contract duties, in contrast, arise from promises made between parties. *Town of Alma,* 10 P.3d at 1262; *Carothers,* 159 P.3d at 655–56.

¶ 15 Colorado cases construing the CGIA immunity provision have established the following principles with regard to when it applies:

- There is immunity if the claim arises from a breach of a general duty of care, as distinguished from a breach of a contract or other agreement. *Brown Grp. Retail,* 182 P.3d at 690; *see Robinson,* 179 P.3d at 1005.

- There is immunity if a claim could succeed only upon establishment of liability for tortious conduct. *Brown Grp. Retail,* 182 P.3d at 691; *Adams,* 140 P.3d at 10; *see Robinson,* 179 P.3d at 1005.

- It is only where the claim *cannot* lie in tort that there is no immunity. *See Berg,* 919 P.2d at 258.

- Thus, even if a claim exists for breach of contract, it is barred if the allegations in the complaint would also support a tort claim; the claim is not barred only if it arises "solely in contract." *Robinson,* 179 P.3d at 1004–05.

### 2. The Nature of a Bailment Claim

■ ¶ 16 The supreme court has described a bailment as "a delivery of personal property by one person to another in trust for a specific purpose, with an express or implied contract that the property will be returned or accounted for when the specific purpose has been accomplished or when the bailor reclaims the property." *Christensen v. Hoover,* 643 P.2d 525, 528–29 (Colo.1982). There are, generally speaking, three types of bailments: (1) those for the sole benefit of the bailor; (2) those for the sole benefit of the bailee; and, (3) as in this case, those for the mutual benefit of both. *Id.* at 529 n. 2; *see* Ray Andrews Brown, *The Law of Personal Property* § 11.1, at 255–57 (3d ed. 1975) (hereinafter Brown); 8A Am.Jur.2d *Bailments* § 7 (2009).

■ ¶ 17 Despite frequent historical references to bailments using contract law terminology, no contract is necessary to create a bailment; one may be created constructively by operation of law. *Christensen,* 643 P.2d at 529; *see also Akers v. Prime Succession of Tenn., Inc.,* 387 S.W.3d 495, 510 (Tenn.2012) (a contract is not always necessary to create a bailment); 8A Am.Jur.2d *Bailments* § 28 ("The element of lawful possession, however created, coupled with a duty to account for the thing as the property of another, is sufficient to constitute a bailment, regardless of whether or not such possession is based on contract in the ordinary sense."); 8 C.J.S. *Bailments* § 3 (2005) (a bailment "does not

necessarily and always depend on a contractual relation").[2]

¶ 18 "Once a bailment relationship has been established, the law imposes upon the bailee certain duties and obligations with respect to the bailed property in [its] possession." *Christensen*, 643 P.2d at 529; *see* 19 Richard A. Lord, *Williston on Contracts* § 53:5, at 21–25 (4th ed.2001); 8 C.J.S. *Bailments* § 54. One such duty is the duty to exercise reasonable care to prevent damage to or loss of the bailed goods. *See Christensen*, 643 P.2d at 529 ("[E]ven a gratuitous bailee must exercise reasonable care to protect the bailor's property, i.e., that which a person of common prudence would use under the circumstances."); *Johnson v. Willey*, 142 Colo. 512, 513, 351 P.2d 840, 841 (1960) (a bailee has a "duty to return bailed property in an undamaged condition"); *see also* 19 *Williston on Contracts* § 53:11, at 51–52 ("Where a bailment is for mutual benefit, the bailee is held to the exercise of ordinary care in relation to the property, and is responsible only for ordinary negligence."); 8 C.J.S. *Bailments* § 54 ("The duty of a bailee is to safeguard property over which he or she has some right of control, and he or she has the duty to exercise ordinary care over the goods." (footnote omitted)).

¶ 19 But a bailee is not an insurer; rather, its liability for breach of this duty depends on whether it breached the duty of reasonable care—that is, was negligent. *See*

*Lynch v. Union Pac. R.R. Co.*, 65 Colo. 152, 154, 172 P. 1061, 1062 (1918); *Nutt v. Davison*, 54 Colo. 586, 588–89, 131 P. 390, 391 (1913); *see also* 19 *Williston on Contracts* § 53:5, at 22 ("The prevailing rule of law governing a bailment for . . . mutual benefit makes the bailee liable for losses that are proximately the result of the bailee's own negligence; ordinarily, the bailee will not be liable for other losses nor is the bailee an insurer of the safe return of bailed goods." (footnote omitted)); 8A Am.Jur.2d *Bailments* § 78 (same); 8 C.J.S. *Bailments* § 56 (same).[3] Damage to or destruction of goods while in the bailee's possession gives rise to a presumption of negligence. *Christensen*, 643 P.2d at 530; *Hipps v. Hennig*, 167 Colo. 358, 361, 447 P.2d 700, 701 (1968); *Bankers Warehouse Co. v. Bennett*, 148 Colo. 323, 326–27, 365 P.2d 889, 891 (1961); *Nutt*, 54 Colo. at 588, 131 P. at 391; *Motor Crane Serv. Co. v. Barker Constr. Co.*, 650 P.2d 1329, 1330 (Colo.App.1982).[4] A bailee may overcome this presumption with evidence that it complied with the standard of reasonable care. *See Christensen*, 643 P.2d at 531 (the bailee failed to rebut the presumption of negligence because he did not show either how the damage had occurred or that he had exercised reasonable care); *Bankers Warehouse*, 148 Colo. at 327, 365 P.2d at 891 (burden was on the bailee to show that the bailed goods were not contaminated by reason of its negligence); *Nutt*, 54 Colo. at 588, 131 P. at 391 (the bailee may rebut the presumption of

---

2. Indeed, some authorities define "bailment" not in contractual terms, but simply as the rightful possession of goods by one who is not the owner. *See, e.g.*, 19 Richard A. Lord, *Williston on Contracts* § 53:1, at 5 (4th ed.2001); 8 C.J.S. *Bailments* § 1; *see also* Ray Andrews Brown, *The Law of Personal Property* § 10.1, at 210 (3d ed. 1975) (because many bailments lack the formal elements of a contract, "[t]he broader definition of Professor Williston is preferable").

3. A bailee will be held liable only for its negligence, even where the bailed property was destroyed by a fire. *See* 8 C.J.S. *Bailments* § 69 ("If a loss by fire is such a danger to the property as should have been foreseen by a person of ordinary prudence, then it is the duty of the bailee to exercise such precautions to prevent a fire as ordinary care requires.").

4. The presumption of a bailee's negligence is essentially an application of the doctrine of res ipsa loquitur. *See Motor Crane Serv. Co. v. Bark-*

*er Constr. Co.*, 650 P.2d 1329, 1331 (Colo.App. 1982) (Tursi, J., dissenting); *Nolan v. Auto Transporters*, 226 Kan. 176, 597 P.2d 614, 621 (1979); *D.S. Sifers Corp. v. Hallak*, 46 S.W.3d 11, 19 (Mo.Ct.App.2001). Res ipsa loquitur is a rule of evidence allowing a jury to infer from circumstantial evidence that some negligent act of the defendant caused the plaintiff's injury, without requiring the plaintiff to prove the defendant's specific negligence. *See Graf v. Tracy*, 194 Colo. 1, 3, 568 P.2d 467, 468 (1977) ("The res ipsa loquitur doctrine permits a jury to infer from circumstantial evidence that the defendant was negligent when certain requisites are met."); *Holmes v. Gamble*, 624 P.2d 905, 906 (Colo.App. 1980) (Res ipsa loquitur is "a rule of evidence which defines the circumstances under which a presumption of negligence will arise as a matter of law."), *aff'd*, 655 P.2d 405 (Colo.1982).

negligence by showing that it exercised a degree of care sufficient to overcome the presumption); *Motor Crane*, 650 P.2d at 1330–31; *see also Hipps*, 167 Colo. at 361, 447 P.2d at 701 (although the bailee has the burden of rebutting the presumption, there is no shift in the burden of proof, which remains with the bailor).

¶ 20 Where goods have been damaged or destroyed while in the possession of a bailee, the bailor may bring a claim for breach of contract *or* may bring a tort claim (for negligence or, perhaps, for conversion). *See, e.g., Rajkovich v. Alfred Mossner Co.*, 199 Ill.App.3d 655, 145 Ill.Dec. 726, 557 N.E.2d 496, 499 (1990) (a bailor may assert alternative theories of liability unless the duty breached is expressly a contractual duty); *Nolan v. Auto Transporters*, 226 Kan. 176, 597 P.2d 614, 621 (1979) (a bailor has a choice of contract or tort remedies); *D.S. Sifers Corp. v. Hallak*, 46 S.W.3d 11, 15 (Mo.Ct.App.2001) (three theories of liability are available to a bailor—general negligence, specific negligence, and breach of bailment contract); *see also* 8A Am.Jur.2d *Bailments* §§ 204–05, 207; 8 C.J.S. *Bailments* §§ 123–24; *cf. Christensen*, 643 P.2d at 527, 530–31 (bailee liable in negligence); *Nutt*, 54 Colo. at 588–89, 131 P. at 391 (bailee's failure to return the bailed property was a breach of contract); *Motor Crane*, 650 P.2d at 1330–31 (bailee liable on alternative claims for negligence and breach of contract). But regardless whether such a claim is pled in contract or in tort, the bailee's liability will depend on whether the bailor establishes that the bailee acted negligently. *See, e.g., Christensen*, 643 P.2d at 531 (to avoid liability, the bailee must show that it was not negligent); *Bankers Warehouse*, 148 Colo. at 327, 365 P.2d at 891 (same); *Nutt*, 54 Colo. at 588–89, 131 P. at 391 (although destruction of bailed property is a violation of the bailment contract, the bailee's liability depends on proof of negligence); *Sampson v. Birkeland*, 63 Ill.App.2d 178, 211 N.E.2d 139, 141 (1965) (the "gist" of a bailee's liability is negligence); *see also* 8 C.J.S. *Bailments* § 56 ("Generally, negligence with respect to the care of the bailed property is the basis of a bailee's liability.").

### C. Analysis

¶ 21 For purposes of our analysis, we need not determine whether all bailment claims are or could be tort claims. We must determine only whether Ms. Foster's claim lies in tort or could lie in tort for purposes of the CGIA.

¶ 22 Neither the fact that Ms. Foster pled her bailment claim as one for breach of contract nor the fact that a bailment claim may be so pled is dispositive. *See Robinson*, 179 P.3d at 1003 ("[T]he form of the complaint is not determinative of the claim's basis in tort or contract."); *Berg*, 919 P.2d at 258 (same). Rather, we must look to whether the "essence" of the injury is tortious in nature—that is, whether the allegations of the complaint could support a claim sounding in tort. *See Robinson*, 179 P.3d at 1005. For three reasons, we conclude that the allegations in Ms. Foster's complaint sound in tort or could support a tort claim.

¶ 23 First, though Ms. Foster has phrased her claim as one for breach of contract, CSU's liability for damage to the bailed goods would depend on proof of negligence. *See, e.g., Christensen*, 643 P.2d at 531; *Bankers Warehouse*, 148 Colo. at 326–27, 365 P.2d at 891; *Nutt*, 54 Colo. at 588–89, 131 P. at 391. In other words, regardless of the theory Ms. Foster has chosen, to prevail she would have to show that CSU had engaged in tortious conduct. *See Brown Grp. Retail*, 182 P.3d at 691 (claims barred where they "could succeed only upon a demonstration of the [defendant's] liability for tortious conduct").

¶ 24 Second, the duty CSU allegedly breached is one implied by law—a duty to act with reasonable care—not one that arises from promises made between the parties. *See Christensen*, 643 P.2d at 529 (the law imposes upon the bailee the duty to exercise reasonable care); *Rajkovich*, 145 Ill.Dec. 726, 557 N.E.2d at 499 (the bailee had an "obligation at law" to exercise reasonable care); *see also* Brown § 11.5, at 270 ("the law ordinarily fixes the particular standard of care which the bailee is required to exercise concerning the bailed goods"); 19 *Williston on Contracts* § 53:5, at 21–22 (in the absence of express contractual terms, "the law fixes the

standard of care that the bailee must exercise"). Although (seemingly largely for historical reasons) the breach of such a duty may give rise to a claim for breach of contract, the duty is actually one independent of the contract. *Miller's Mut. Fire Ins. Ass'n v. Parker*, 234 N.C. 20, 65 S.E.2d 341, 343 (1951) ("The obligation to use due care in [bailment contracts] arises from the relation created by the contract and is independent, rather than a part of it."); *see* 8 C.J.S. *Bailments* § 54 (duty of a bailee to protect the bailed property is "independent of the contract"); *see also* Brown § 10.1, at 209–10 (noting the confusion that the traditional contract-based definition of a bailment has caused, and asserting that a "great deal of this uncertainty and casuistry would have been avoided had the broader [noncontractual] definition of bailment been adopted at the beginning"); Kurt Philip Autor, Note, *Bailment Liability: Toward a Standard of Reasonable Care*, 61 S. Cal. L.Rev. 2117, 2120 n.6 (1988) (noting the "anachronism, confusion, and basic unfairness" of traditional contract-based bailment doctrine); R.H. Helmholz, *Bailment Theories and the Liability of Bailees: The Elusive Uniform Standard of Reasonable Care*, 41 U. Kan. L.Rev. 97, 97–99 (1992–1993) (exploring the continued persistence of the contractual theory of liability in bailment cases, despite widespread scholarly criticism, and despite the accepted view that the liability of a bailee depends on negligence).[5] Indeed, no contract is necessary to give rise to the duty. *See Christensen*, 643 P.2d at 529 (no agreement is necessary to create a bailment; once created, a bailee's duty is imposed by law).

¶ 25 Third, as discussed, an action against a bailee for damage to or destruction of bailed property can be pled alternatively in contract or in tort. *See, e.g., Inst. of London Underwriters v. Eagle Boats, Ltd.*, 918 F.Supp. 297, 299 (E.D.Mo.1996) (applying Missouri law) ("In an action by a bailor against the bailee for failure to return the bailed property, the bailor may proceed on alternate theories of general negligence of the bailee, specific negligence of the bailee, or breach of the bailment contract."); *Nolan*, 597 P.2d at 621 (where bailed property is damaged while in the possession of a bailee, the bailor has a choice of remedies in contract or tort); *Agric. Ins. Co. v. Constantine*, 144 Ohio St. 275, 58 N.E.2d 658, 663 (1944) ("Where the bailee fails to redeliver the property upon a legal demand therefor, ... [i]t is generally recognized that the bailor, under such circumstances, may bring an action based upon breach of contract or upon negligence."); *see also* 8 C.J.S. *Bailments* §§ 123–24. Under the CGIA, regardless whether a plaintiff has pled a valid breach of contract claim, the claim is barred if it could be pled alternatively as a tort claim. *Robinson*, 179 P.3d at 1006.[6]

¶ 26 The supreme court's decision in *City & Cnty. of Denver v. Desert Truck Sales, Inc.*, 837 P.2d 759 (Colo.1992), supports our conclusion. After police had impounded a Rolls Royce automobile, the vehicle's owner filed a complaint for replevin against the municipality seeking the vehicle's return. *Id.* at 761. The owner also sought damages for detention of the vehicle and for any physical damage to the vehicle resulting from its detention. *Id.* at 765. The court noted that the "gist" of a replevin claim is the wrongful detention of property. *Id.* at 765. Because a "claim for damages resulting from detention of property may lie in tort," the court held that the vehicle owner's claim could lie in tort

---

5. We also note that, in certain cases, as with a claim for breach of the duty of good faith and fair dealing in the insurance context, the breach of an implied contractual obligation may give rise to a tort claim. *See, e.g., Lira v. Shelter Ins. Co.*, 913 P.2d 514, 516–17 (Colo.1996) ("[An insurer's] tort liability is based on the quasi-fiduciary nature of the insurance relationship and is predicated on the parties' contractual responsibilities."). Breach of the duty at issue, although arising (in this case) out of the parties' contractual relationship (though not out of the contract itself), likewise may give rise to a tort claim.

6. Ms. Foster contends that because a claim for destruction of bailed property may be pursued under a contract theory or a tort theory, her claim for breach of contract survives even if she could have pled the claim in tort. This argument ignores the language of subsection 24–10–106(1) and erroneously assumes that a bailor may pursue multiple claims for destruction of bailed property. The bailor has but one claim, with the option of pleading that claim under different theories.

for purposes of the CGIA. *Id.* Ms. Foster's bailment claim is analogous to the replevin claim at issue in *Desert Truck Sales. See Curtis v. Counce,* 32 P.3d 585, 588 (Colo.App. 2001) (holding that, for statute of limitations purposes, a claim for breach of bailment based on wrongful retention of property is analogous to claims for replevin, conversion, and theft).[7]

¶ 27 The only Colorado case which Ms. Foster cites for the proposition that a claim for damage to bailed property is a purely contractual claim—*Spaur v. City of Greeley,* 150 Colo. 346, 372 P.2d 730 (1962)—is distinguishable. In that case, an individual sued a municipality for damages to his airplane that occurred while the plane was parked at the municipal airport. *Id.* at 347, 372 P.2d at 730. The supreme court concluded that the city was not immune from suit because the plane owner's claim, as pled, was contractual, and "it has been clear that sovereign immunity no longer exists as to contracts of the state government." *Id.* at 347–48, 372 P.2d at 730–31. However, the case was decided before the CGIA was enacted in 1971. *See* ch. 323, sec. 1, §§ 130–11–1 to –17, 1971 Colo. Sess. Laws 1204, 1204–11.[8] Thus, the court's holding predates the General Assembly's addition of language that is now critical to the governmental immunity inquiry—namely, that public entities are immune from claims which "*could* lie in tort *regardless of whether* that may be the type of action or the form of relief chosen by the claimant." § 24–10–106(1) (emphasis added). Although the *Spaur* court appears to have relied on the fact that the complaint alleged only a claim for breach of contract, *see* 150 Colo. at 347,

372 P.2d at 730, our case law now clearly establishes—consistent with the express language of subsection 24–10–106(1)—that the form of the complaint is not determinative. *See Robinson,* 179 P.3d at 1003.

¶ 28 Finally, though the parties devote substantial discussion in their briefs to the economic loss rule, we conclude that the economic loss rule has no bearing on this case. The economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma,* 10 P.3d at 1264. But where, as here, the duty allegedly breached exists independently of the contract, a tort action may be maintained. *See, e.g., Metro. Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 317–18 (Colo.1980) (heating contractor owed its residential customer a common law duty to perform the work subject to the service contract with reasonable care and skill, the breach of which would subject it to liability for negligence); *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 341, 366 P.2d 673, 677 (1961) (plumbing contractor owed a duty to do its work at a residence with reasonable care and diligence; liability for breach of that duty was based on negligence, not contract).

### III. Conclusion

¶ 29 Because we conclude that Ms. Foster's claim for the destruction of her bailed property lies in tort or could lie in tort, it is barred by the CGIA, unless an exception to

---

7. This is consistent with the notion that injuries to property typically give rise to tort liability. *See, e.g., Duncan v. Schuster-Graham Homes, Inc.,* 194 Colo. 441, 445, 578 P.2d 637, 640 (1978) (describing typical tort actions as those "seeking damages for personal injury or property damage"), *superseded by statute on other grounds,* ch. 144, sec. 1, § 13–80–127, 1979 Colo. Sess. Laws 631, 631–32; *Mumford v. Wright,* 12 Colo. App. 214, 217, 55 P. 744, 746 (1898) ("Torts may be divided into two general classes,—the first, designated as 'property torts,' embracing all injuries and damages to property . . . ."), *overruled on other grounds by Publix Cab. Co. v. Colo. Nat'l Bank of Denver,* 139 Colo. 205, 338 P.2d 702 (1959); *accord Watson v. Pub. Serv. Co.,* 207 P.3d 860, 866 (Colo.App.2008).

8. Ms. Foster acknowledges that *Spaur* predates the CGIA but argues that the case is still binding precedent. In support of that argument, she notes that a division of this court cited *Spaur* in its opinion in *Thompson Creek Townhomes, LLC v. Tabernash Meadows Water & Sanitation Dist.,* 240 P.3d 554, 556 (Colo.App.2010). However, the division cited *Spaur* for the proposition that local governmental units, like state entities, are not immune from contractual claims. The division did not discuss *Spaur*'s holding with respect to the nature of a bailment claim or whether such a claim may be barred by the CGIA.

immunity applies. In opposing CSU's motion to dismiss, Ms. Foster argued in the alternative that the exception for "[a] dangerous condition of any public building," section 24–10–106(1)(c), applies; however, the district court did not rule on that issue. Therefore, we reverse the district court's order, and remand the case to the district court to consider and rule on Ms. Foster's assertion that the exception to immunity expressed in subsection 24–10–106(1)(c) applies. We leave to the district court's discretion the procedure to be employed in resolving that issue.

JUDGE FOX and JUDGE NAVARRO concur.