The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 29, 2020

## 2020COA151

**No. 19CA1162, *Teran v. Regional Transportation District* — Government — Colorado Governmental Immunity Act — Immunity and Partial Waiver**

A division of the court of appeals holds for the first time that, under section 24-10-106(1)(a), C.R.S. 2019, a plaintiff need not show that a public employee operating a motor vehicle acted negligently in operating the motor vehicle for the waiver of sovereign immunity for injuries "resulting from . . . [t]he operation of a motor vehicle" to apply, provided that the plaintiff shows that the operation of the motor vehicle was a cause of the injuries. Thus, sovereign immunity did not bar plaintiff's claim for injuries caused by RTD's negligent maintenance of the bus's handrail, because she demonstrated that her injuries resulted from the bus driver's

sudden stop, even though the jury determined that the driver was not negligent.

We also hold that, to be entitled to prejudgment interest, a plaintiff must specifically request interest in the complaint; a generic request for "all allowable relief that is just and proper and allowable under Colorado law" is insufficient.

Court of Appeals No. 19CA1162
City and County of Denver District Court No. 18CV32155
Honorable Elizabeth A. Starrs, Judge

Maria Teran,

Plaintiff-Appellee and Cross-Appellant,

v.

Regional Transportation District,

Defendant-Appellant and Cross-Appellee.

JUDGMENT AND ORDERS AFFIRMED

Division VII
Opinion by JUDGE TOW
Navarro and Lipinsky, JJ., concur

Announced October 29, 2020

Muhaisen and Muhaisen, LLC, Mark J. Malone, Wadi Muhaisen, Denver, Colorado, for Plaintiff-Appellee and Cross-Appellant

James Stadler, Marisela D. Sandoval, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

¶ 1    Defendant, Regional Transportation District (RTD), appeals the trial court's judgment entered for plaintiff, Maria Teran, on a jury verdict finding RTD negligent.  RTD also appeals the trial court's order denying its post-trial motions for relief from the judgment, in which it claimed RTD was entitled to immunity under the Colorado Governmental Immunity Act (CGIA), §§ 24-10-101 to -120, C.R.S. 2019.

¶ 2    To resolve RTD's appeal, we explore the breadth of the CGIA's provision waiving immunity "in an action for injuries resulting from . . . [t]he operation of a motor vehicle." § 24-10-106(1)(a), C.R.S. 2019.  In doing so, we conclude that Teran's injuries "result[ed] from" an RTD driver's sudden stop within the meaning of the provision, even though the driver's actions may not have been the most direct cause of her injuries, because Teran claimed, in part, that (1) the handle she had been holding had been negligently maintained; and (2) the sudden stop dislodged the handle, leading to her fall.  Because RTD's immunity was thus waived under section 24-10-106(1)(a), we affirm the trial court's order denying RTD's post-trial motions.  We also affirm the trial court's judgment against RTD.

¶ 3　　Teran cross-appeals the trial court's order denying, in part, her motion to amend the judgment for costs and interest. We affirm the order.

## I.　Background

¶ 4　　In July 2016, Teran was a passenger on an RTD bus travelling eastbound on Evans Avenue in Denver. As the RTD bus was proceeding on its route, a vehicle suddenly, and apparently in violation of traffic laws, emerged from a cross street and began driving across Evans Avenue toward the left side of the bus. The bus driver slammed on the brakes, narrowly avoiding a collision and bringing the bus to an abrupt stop.

¶ 5　　Teran, who was standing up and holding on to one of the bus's handrails, fell when the bus driver suddenly stopped the bus. She claimed that the handrail she was holding came loose when the driver braked, and thus failed to prevent her from falling. Teran sustained injuries to her back and shoulder as a result of the fall.

¶ 6　　Teran filed suit against the bus driver and RTD asserting two distinct claims of negligence. The first claim alleged that RTD was negligent in failing to properly maintain the handrail that Teran was using for support. The second claim alleged that the bus driver was

2

negligent in suddenly stopping the bus without warning. Teran's second claim also asserted that RTD was liable for the bus driver's negligence under a theory of respondeat superior.

¶ 7    Following a trial, the jury found that the bus driver had not acted negligently. However, as to Teran's first claim, the jury found that RTD was negligent in maintaining the handrail and that RTD's negligence had caused Teran's injuries. Accordingly, the trial court entered a judgment in favor of Teran and against RTD for its negligent maintenance of the handrail.

¶ 8    RTD then filed two separate, but nearly identical, post-trial motions seeking relief from the judgment — one under C.R.C.P. 12(h)(3) and one under C.R.C.P. 60(b)(3). Specifically, it argued in each motion that it was entitled to immunity under the CGIA, and thus the court lacked subject matter jurisdiction over Teran's claim. The trial court, however, found that RTD's negligent maintenance of the handrail constituted the "operation of a motor vehicle" and thus RTD's immunity was waived under section 24-10-106(1)(a). Accordingly, it denied each of RTD's motions.

## II.   RTD's Post-Trial Motions

¶ 9    RTD maintains that it has immunity from Teran's first claim under the CGIA. Thus, it argues, the court erred by denying its Rule 12(h)(3) and Rule 60(b)(3) motions challenging the court's jurisdiction to hear the claim. We disagree.[1]

### A.   Standard of Review

¶ 10    A motion to dismiss under Rule 12(h)(3) challenges whether a court has subject matter jurisdiction — a question of law. *See, e.g., Lee v. Banner Health*, 214 P.3d 589, 594 (Colo. App. 2009) ("A trial court's determination regarding subject matter jurisdiction is a question of law . . . subject to de novo review."). Thus, where, as here, there are no factual disputes relevant to the issue of jurisdiction, we review a trial court's ruling on a Rule 12(h)(3) motion de novo. *See id.; see also Tulips Invs., LLC v. State ex rel. Suthers*, 2015 CO 1, ¶ 11. We also review de novo a trial court's ruling on a Rule 60(b)(3) motion. *Oster v. Baack*, 2015 COA 39, ¶ 11.

---

[1] Because both of RTD's motions were premised on the same jurisdictional argument, we address the court's denial of the motions under the same analysis.

¶ 11 Additionally, whether the trial court erred by denying RTD's post-trial motions turns on the interpretation of section 24-10-106(1)(a), which we also review de novo. *Robinson v. Ignacio Sch. Dist.*, 2014 COA 45, ¶ 8.

## B. Applicable Law

¶ 12 Under Rule 60(b)(3), "the court may relieve a party . . . from a final judgment . . . [if] the judgment is void." As relevant here, "[a] judgment is void if the court lacked . . . subject matter jurisdiction over the cause of action." *Nickerson v. Network Sols., LLC*, 2014 CO 79, ¶ 9. Similarly, Rule 12(h)(3) requires that a court dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter."

¶ 13 "[S]overeign immunity is a jurisdictional question, an absolute bar to suit, and prevents the court from maintaining subject matter jurisdiction over the suit." *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 394 (Colo. 2002), *abrogated on other grounds by Martinez v. Estate of Bleck*, 2016 CO 58; *see also Walton v. State*, 968 P.2d 636, 643 (Colo. 1998) ("Governmental immunity is an issue of subject matter jurisdiction."). Hence, in support of its

post-trial motions, RTD sought to establish a lack of subject matter jurisdiction by claiming immunity under the CGIA.

¶ 14     The CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort . . . ." § 24-10-106(1).  However, the CGIA's grant of immunity is not without exception.  Indeed, as pertinent here, "[s]overeign immunity is waived by a public entity in an action for injuries resulting from . . . [t]he operation of a motor vehicle, owned or leased by such public entity, by a public employee while in the course of employment." § 24-10-106(1)(a).  "Because the CGIA is in derogation of Colorado's common law, the grant of immunity is to be strictly construed against the public entity, and the waiver provisions are to be deferentially construed in favor of victims." *Young v. Jefferson Cty. Sheriff*, 2012 COA 185, ¶ 8; *accord Corsentino v. Cordova*, 4 P.3d 1082, 1086 (Colo. 2000) (courts should broadly interpret immunity waivers to favor victims); *Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (same).

## C.   Analysis

¶ 15    To determine whether the trial court erred by denying RTD's post-trial motions, we must examine whether RTD's governmental immunity was waived under section 24-10-106(1)(a) as to Teran's first claim of negligence.  We conclude that it was.

¶ 16    RTD argues that its negligent maintenance of the handrail cannot be construed as "the operation of a motor vehicle." Accordingly, it argues, Teran's injuries did not "result[] from" the operation of the bus.  Moreover, RTD points out that Teran alleged that RTD itself, not a specific public employee, failed to maintain the handrail at issue.  Thus, RTD contends that section 24-10-106(1)(a) does not apply.  But RTD, in our view, reads the statute too narrowly, ignoring that it was the bus driver's sudden stop that led to Teran's injuries.

¶ 17    First, RTD concedes, and we agree, that the bus driver's sudden stop constituted "[t]he operation of a motor vehicle . . . by a public employee while in the course of employment." § 24-10-106(1)(a); *see Harris v. Reg'l Transp. Dist.*, 15 P.3d 782, 784 (Colo. App. 2000) (interpreting "operation of a motor vehicle" as "actions of the operator related to physical control of the functions

of the motor vehicle"). Whether RTD's immunity was waived, then, turns on whether Teran's injuries can be said to have "result[ed] from" the sudden stop.

¶ 18 Section 24-10-106(1)(a) does not state that the operation of a motor vehicle must be the most direct, proximate, or only cause of an injury for immunity to be waived. Nor does it purport to limit the waiver of immunity to only those causes of action where negligent operation of a vehicle is the basis of the claim. Rather, it states simply that, for immunity to be waived, an injury must "result[] from" the operation of a motor vehicle. Construing that language, as we must, broadly and deferentially in favor of victims, *see Young*, ¶ 8, we conclude that section 24-10-106(1)(a) may waive immunity even where, as here, the operation of a motor vehicle is neither the most direct cause of an injury nor the basis for the cause of action. The pertinent question, to be addressed on a case by case basis, is simply whether an injury is sufficiently attributable to the operation of a motor vehicle to have "result[ed] from" it.

¶ 19 Our reading of the statute is supported by at least one other division of this court. In *Harris,* a division of this court rejected an

argument that there is no waiver of immunity under section 24-10-106(1)(a) for injuries that result from a lack of maintenance. 15 P.3d at 784-85.  In doing so, the division noted, in dictum, that "if injuries otherwise result from the operation of a bus, even if the underlying cause may have been faulty maintenance, the waiver of immunity is applicable." *Id.* at 785.  In other words, the division in *Harris* suggested that where the operation of a motor vehicle is not the only, or even primary, cause of an injury, the waiver provision may still apply.  Finding that scenario before us now, we agree with the *Harris* division's interpretation of the statute.

¶ 20     We are mindful of the potential burden our interpretation may place on RTD to ensure that its buses are diligently maintained. But to hold differently would have consequences of equal import, as it would effectively allow RTD to escape liability wherever its lack of maintenance, rather than a bus driver's action, is a primary cause of injury.  And we reiterate that we are obligated to "broadly construe the CGIA provisions that waive immunity in the interest of compensating victims of governmental negligence." *Springer*, 13 P.3d at 798.  We note, too, that a determination of the absence of

9

governmental immunity is not a finding of liability. *Harris*, 15 P.3d at 785.

¶ 21     We turn now to applying these principles to Teran's negligence claim against RTD. True, the bus driver's sudden stop may not have been as direct a cause of Teran's injuries as RTD's negligent maintenance of the handrail. Moreover, it was the lack of maintenance, not the bus driver's actions in avoiding the collision, that was the negligent conduct on which RTD's liability rested. But, as we have concluded above, neither of these facts bars the applicability of the waiver provision. And, in our view, Teran's injuries were sufficiently traceable and connected to the driver's sudden stop to have "result[ed] from" it within the meaning of the statute. Thus, because Teran's claim sought damages for injuries resulting from the sudden stop, RTD's immunity was waived under section 24-10-106(1)(a).

¶ 22     RTD argues, however, that because the jury found that the driver was not negligent and not a cause of Teran's injuries, the injuries cannot be said to have resulted from the operation of the bus. But nothing in the language of section 24-10-106(1)(a) indicates that a driver must act negligently in the operation of a bus

10

for immunity to be waived.  Rather, as noted above, the only requisite is that an injury "result[] from" the driver's operation of the bus.[2]

¶ 23    Furthermore, as to the jury's finding on causation, RTD mischaracterizes the jury's answers to the interrogatories on the verdict form.  The jury was asked: "Was the negligence, if any of the [driver], a cause of any of the injuries, damages or losses claimed by the plaintiff?"  The jury, answering in the negative, determined only that the driver's *negligence* was not a cause of Teran's injuries.  The jury did not specifically find, as RTD claims, that the driver's operation of the vehicle was not a cause of Teran's injuries.

¶ 24    In sum, RTD's governmental immunity was waived under section 24-10-106(1)(a) as to Teran's negligence claim against it.  Thus, the CGIA did not confer immunity on RTD so as to deprive the trial court of subject matter jurisdiction over Teran's claim.

---

[2] *Robinson v. Ignacio School District* appears to suggest that immunity may be waived under section 24-10-106(1)(a), C.R.S. 2019, only if an injury results from a driver's tortious act.  2014 COA 45, ¶ 20.  To the extent it does so, we disagree.  *See Chavez v. Chavez*, 2020 COA 70, ¶ 13 ("[D]ivisions [of the court of appeals] are not bound by the decisions of other divisions.").

Accordingly, we discern no error in the court's denial of RTD's post-trial motions.[3]

## III.   Jury Instructions

¶ 25    RTD contends that the trial court erred by rejecting three of its tendered jury instructions. We disagree.

## A.   Additional Background

¶ 26    RTD proposed an instruction requiring that, to establish negligence, Teran must prove that (1) a dangerous condition existed on the bus which created an unreasonable risk of injury and (2) RTD was negligent for failing to use reasonable care in the maintenance of the bus. RTD also proposed instructions with the CGIA's definitions of the terms "dangerous condition," which includes a notice component, and "maintenance."

¶ 27    The CGIA defines "dangerous condition" as

> either a physical condition of a facility or the
> use thereof that constitutes an unreasonable
> risk to the health or safety of the public, which

---

[3] The trial court determined that RTD's immunity was waived under section 24-10-106(1)(a) because RTD's negligent maintenance of the handrail was within the scope of "[t]he operation of a motor vehicle." We make no judgment as to the trial court's conclusion, and we affirm on other grounds. *See Taylor v. Taylor*, 2016 COA 100, ¶ 31 ("An appellate court may . . . affirm on any ground supported by the record.").

12

is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity or public employee in constructing or maintaining such facility.

§ 24-10-103(1.3), C.R.S. 2019.

¶ 28 As to "maintenance," the CGIA defines the term as

the act or omission of a public entity or public employee in keeping a facility in the same general state of repair or efficiency as initially constructed or in preserving a facility from decline or failure. "Maintenance" does not include any duty to upgrade, modernize, modify, or improve the design or construction of a facility.

§ 24-10-103(2.5).

¶ 29 The trial court rejected all three of RTD's tendered instructions.[4] Instead, it instructed the jury that to recover from RTD for her claim of negligence, Teran had to prove that (1) she was injured; (2) RTD was negligent in the maintenance of the handrail;

---

[4] Because RTD never filed its proposed instructions with the trial court (instead, apparently, emailing them to the court's clerk), the precise language of each proffered instruction is absent from the appellate record. But Teran does not dispute RTD's recollection of the instructions as stated in its opening brief. Thus, in addressing this issue, we accept RTD's description of the proposed instructions.

13

and (3) RTD's negligence was a cause of Teran's injuries. The court defined negligence as "a failure to do an act which a reasonably careful person would do, or the doing of an act which a reasonably careful person would not do, under the same or similar circumstances to protect others from bodily injury."

## B.    Standard of Review

¶ 30    We review for abuse of discretion a trial court's decision to reject a particular jury instruction. *Danko v. Conyers*, 2018 COA 14, ¶ 54. "A trial court's ruling on jury instructions is an abuse of discretion only when the ruling is manifestly arbitrary, unreasonable, or unfair." *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011).

¶ 31    To the extent RTD suggests that the trial court failed in its duty to correctly instruct the jury on the governing law, *see id.*, we review de novo whether the court's instructions as a whole accurately did so. *Id.*

## C.    Law and Analysis

¶ 32    First, RTD appears to contend that it was entitled to each of its tendered instructions simply because the court construed RTD's maintenance of the handrail as the "operation of a motor vehicle,"

14

thereby waiving immunity under section 26-10-106(1)(a). But to the extent RTD suggests that finding alone entitled it to the tendered instructions, we disagree. As we have concluded above, RTD's immunity was waived not necessarily because RTD's maintenance constituted the "operation of a motor vehicle," but because Teran's injuries resulted from the bus driver's sudden stop during the operation of the bus. Thus, insofar as RTD's argument relies on a connection between its maintenance of the handrail and the applicability of the waiver provision, its reliance is misplaced.

¶ 33    Second, RTD argues that it was entitled to an instruction on negligence that mirrors the CGIA's immunity waivers for physical conditions of public buildings and certain enumerated facilities. Specifically, RTD contends that the jury should have been instructed, as its tendered instructions proposed, that it could not find RTD negligent unless it found that the loose handrail constituted an unreasonable risk to the health and safety of the public and that RTD had notice of the condition. We are not persuaded.

¶ 34    As a preliminary matter, the CGIA generally concerns only whether a public entity is entitled to governmental immunity from a

specific claim — an issue of subject matter jurisdiction.  *See* § 24-10-106(1).  Should immunity be waived for a negligence claim against an entity such as RTD, and subject matter jurisdiction bestowed, the CGIA does not purport to define what standard of care should then apply — which is an issue concerning liability.  In other words, whether a public entity is entitled to immunity and whether a public entity is liable under a theory of negligence are two separate considerations, with the CGIA governing the former but not the latter.  *See Springer,* 13 P.3d at 803 ("[T]he purpose of the CGIA is to allow Colorado's law of negligence to operate against governmental entities, except to the extent that it has barred suit against them.").  RTD appears to conflate the two.

¶ 35  Moreover, even assuming it would be proper to draw from the CGIA in crafting a negligence instruction where an entity's immunity is waived under a CGIA provision, RTD's instructions drew language from waiver provisions that were wholly inapplicable to Teran's claim.  Indeed, an RTD bus is neither a public building nor an enumerated facility in any CGIA provision waiving immunity for public facilities.  *See* § 24-10-106(1).  Furthermore, neither the term "maintenance" nor the term "dangerous condition" appear in

16

section 24-10-106(1)(a), the waiver provision relevant here. And the CGIA states that its definitions of those terms are applicable only as used in CGIA provisions. *See* § 24-10-103 (CGIA definitions apply "[a]s used in this article 10."). We see no reason why having its immunity waived under one CGIA provision entitled RTD to an instruction mirroring other, inapplicable waiver provisions.

¶ 36    RTD further argues that failing to instruct the jury as it requested contravened legislative intent because it allowed the jury to find RTD liable regardless of whether it had notice of the loose handrail and whether the loose handrail was a "dangerous condition" under the CGIA. But whether RTD had notice of the condition was not rendered irrelevant to the jury's determination of liability, as RTD suggests. Rather, whether RTD had notice fell under whether it had acted reasonably under the circumstances, which the jury was instructed to consider. Certainly, RTD was not held to a strict liability standard simply because there was no notice instruction modeled after the CGIA. Moreover, as noted above, the CGIA applied here only in determining the extent of RTD's immunity, not its liability. Thus, we cannot see how a negligence instruction that did not draw on the CGIA's "dangerous

17

condition" requirement found in an unrelated waiver provision contravened the legislature's intent.

¶ 37    Finally, to the extent RTD suggests the trial court otherwise did not properly instruct the jury on the standard of care, we disagree.  RTD cites to no authority, and we are aware of none in Colorado, that entitles a party in RTD's position to a standard of care instruction other than that given by the trial court.  Indeed, simply because Teran's negligence claim concerned a maintenance issue did not compel an instruction on notice, as would a claim rooted in, for example, the Premises Liability Act.  *See, e.g.,* *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 570-71 (Colo. 2008).

¶ 38    In sum, we see no error in the trial court's instruction on negligence.  Nor, for the reasons articulated above, do we conclude that the trial court's decision to reject RTD's tendered instructions was manifestly unreasonable, arbitrary, or unfair.  Thus, we discern no abuse of discretion.  *Day*, 255 P.3d at 1067.

IV.   Prejudgment Interest

¶ 39    Teran cross-appeals, contending that the trial court erred by denying, in part, her motion to amend judgment for costs and

interest.  Specifically, she argues that the trial court erroneously denied her request to amend the judgment against RTD to include prejudgment interest.  We disagree.

¶ 40    Whether the trial court erred by denying Teran's request turns on the interpretation of section 13-21-101(1), C.R.S. 2019, which we review de novo.  *Munoz v. Am. Family Mut. Ins. Co.*, 2018 CO 68, ¶ 9.  That section provides that "[i]n all actions brought to recover damages for personal injuries . . . it is lawful for the plaintiff *in the complaint* to claim interest on the damages claimed from the date the action accrued."  § 13-21-101(1) (emphasis added).

¶ 41    Interpreting section 13-21-101(1), our supreme court held that "the plaintiff must claim . . . interest in the complaint" to be awarded prejudgment interest under the statute.  *Munoz*, ¶ 11. Here, however, Teran did not specifically request prejudgment interest in her complaint.  Rather, she simply requested "damages for injuries enumerated above and for all allowable relief that is just and proper and allowable under Colorado law."  Because the statute must be strictly construed, we agree with the trial court that Teran's catchall prayer for relief was insufficient to satisfy the statute's pleading requirement.  *See Sperry v. Field*, 205 P.3d 365,

367 (Colo. 2009) ("Because an interest statute is in derogation of the common law, the language of the statute must be strictly construed by the court."). Indeed, Teran cites to no case of binding authority, and we are aware of none, in which a plaintiff was awarded prejudgment interest without at least using the word "interest" in the complaint's prayer for relief. Because, in our view, Teran failed to adequately claim interest in her complaint, we affirm the court's denial of her request for prejudgment interest. *See Munoz*, ¶ 11.

## V. Conclusion

¶ 42    The trial court's judgment in favor of Teran and against RTD is affirmed. The court's orders denying RTD's post-trial motions and Teran's request for prejudgment interest are also affirmed.

JUDGE NAVARRO and JUDGE LIPINSKY concur.